## Liter v. Hoagland.

May 13, 1947.

Rehearing denied September 26, 1947.

Roscoe Conkling, Judge.

Farnsley, Hottell & Stephenson for appellant.

Wilbur O. Fields and Garner M. Petrie for appellee.

OPINION OF THE COURT BY JUDGE SILER—Reversing.

E. C. Hoagland, the appellee, sued W. T. Liter, the appellant, on a promissory note. Before the evidence had been completed, the trial court directed a verdict in favor of Hoagland. Judgment for the amount of the note having been entered against Liter, he is now seeking a reversal by this appeal.

The directed verdict for Hoagland was based upon the assumed merit of his reply in which he pled limitation as a complete bar against the defense set up by Liter, who had pled full payment of this debt by some subsequent transactions following the execution of the note.

The gist of Liter's contention on this appeal is that the statute of limitation may not serve as a bar to extinguish a valid defense, where no affirmative relief is sought and where the defense of an alleged payment of a promissory note springs from transactions directly connected with the claim on the note itself.

According to evidence introduced on this trial, Hoagland was a banker and an insurance agent in the town of Prospect. He was business and financial adviser and rather close friend to Liter, who operated a rock quarry and who also did a hauling business with trucks. The business relationship between Hoagland and Liter began about the year 1923 and it extended through a twenty year period thereafter. Hoagland wrote insurance for Liter, advanced the premiums thereon, then charged him with these items on an open account. Liter did hauling for Hoagland, furnished him with quarry rock, then charged him with these items on an open account. There seems to have been a mutuality of open accounts and also interrelated transactions between Hoagland and Liter during the years of their business dealings. This note was executed by Liter in favor of Hoagland in 1929 in the principal sum of $930, representing insurance premiums due in that amount, and this note was credited in 1937 in the sum

of $100 by Hoagland's application of that amount on the note out of funds in Hoagland's hands belonging to Liter. The 1937 credit on this note was made by Hoagland without the knowledge or consent of Liter. It appears that after the 1929 execution of this note, the business transactions between Hoagland and Liter continued in unabated volume and with unchanged character. And although Liter's business methods were probably inefficient and his accounting practices were doubtless inaccurate, yet Hoagland seems to have kept a rather accurate accounting of the debits and credits between himself and Liter, so much so that Hoagland wrote Liter a letter in 1943 and enclosed his version of the complete state of accounts between the two of them up until that date. This 1943 Hoagland version of the state of accounts between himself and Liter listed this $930 promissory note as one of the items of credit in favor of Liter, thus giving countenance to the idea that the note obligation and the other open account items were all related and connected. Hoagland, through the following testimony, gave further countenance to this idea that the note transaction and the open account transactions were all connected in a unified sphere of business dealings between himself and Liter:

"Q. You owed him $500 in 1930, didn't you? A. Yes, somewhere along about that time.

"Q. W. W. Liter had a right to collect that money in 1930, didn't he? A. At that time I was carrying W. T. Liter on my books for a considerable sum, advancing his premiums on his insurance, and I had his note of W. T. Liter and W. W. Liter's endorsement on it, and I didn't feel I was under any obligation to pay him until they settled with me."

In other words, if we interpret Hoagland's testimony correctly, he was saying that he refrained from paying to Liter certain open account items owed by Hoagland to Liter because Liter owed Hoagland this note and Hoagland considered that the two obligations or sets of obligations should rightfully be abutted one against the other. Hoagland was considering that Liter would have the right to satisfy this note, or some part of it, through debit items which Liter had against Hoagland.

Having set out the outcome of this trial, the contention of the appellant on this appeal, the evidence bearing on the relationship and on the transactions between these parties, we now look to the law.

The general rule is that statutes of limitation are not applicable to defenses. For instance, where the defendant in an action on a note pleads total failure of consideration and alleges a parol warranty of property for which the note was given, the plaintiff cannot avoid such a defense by insisting on the statute of limitations. See 17 R. C. L. 745.

The statute of limitation is intended to close the door of the courts to the bringing of suits on *stale claims*. It is intended to be used as a blanket to smother any faint respiration of moribund claims of plaintiffs in regular causes of action or those of defendants asserted by counterclaims. Limitation law is not intended to bar nor smother any *mere defense* of a party so as to compel him to stand dumb and mute while his antagonist bludgeons his head with every weapon in the book of legal, offensive warfare. For, so long as the courts will hear a plaintiff's cause of action, they will also hear a defendant's retort of vindication for the attitude he has assumed, provided always that the cause of action and the asserted defense are closely and logically related in a sort of legal affinity. See Aultman & Taylor Co. v. Meade, 121 Ky. 241, 89 S. W. 137, 123 Am. St. Rep. 193.

The purpose of statutes of limitations is to bar actions rather than to suppress defenses. Such statutes, as a general rule, are not applicable to defenses but are only applicable against assertions of affirmative relief. Thus, so long as the courts will hear the plaintiff's case, time will not bar the defense which might be urged thereto and which grew out of the transaction connected with the plaintiff's claim. See 34 Am. Jur. 57.

The main problem of the instant case is to determine whether Liter's defense of having paid this note through the items of account charged by Liter against Hoagland constituted that which grew out of transactions connected with Hoagland's claim. The entire claim of Hoagland's note sprang up from items of open account, these being unpaid insurance premiums. This same open account, as it was presented by a statement in 1943 and as

it was admitted by Hoagland's deposition, contained credit items of payment pro tanto by Liter. Therefore, we believe that Hoagland's claim on this note and Liter's defense of payment were both originally items of the same open account. Both grew out of the mutuality of interrelated business dealings between these parties.

Because of this view, we have concluded that the trial court committed prejudicial error in directing a verdict for Hoagland. We believe that the trial court should have submitted this whole case, including Liter's defense of payment of this note, to the jury for decision. Even though Liter may never convince a jury that he has paid this note, yet we believe that his defense of having done so can not legally be extinguished by Hoagland's plea of limitation. Liter's plea of payment of this note was not the assertion of a stale claim. Rather, it was an act of taking legal shelter from the noonday heat of Hoagland's sweltering cause of action. And both the shelter and the swelter appear to us to have been in closely contiguous positions in the very same pastureland of mutual business transactions.

Wherefore, for the reason herein indicated, the judgment is reversed for proceedings consistent herewith.