**In the Matter of MID ATLANTIC FUND, INC., Debtor.**

**Bankruptcy No. 81 B 10845 PA.**

United States Bankruptcy Court, S.D. New York.

May 2, 1986.

Togut, Segal & Segal, New York City, for trustee.

Gitomer, Schwimmer & Gitomer, Forest Hills, N.Y., for Malcolm Davis and Monroe Seibel.

## MEMORANDUM DECISION DENYING RECLAMATION MOTION (FREDEBAUGH MORTGAGE)

PRUDENCE B. ABRAM, Bankruptcy Judge:

Malcolm Davis and Monroe Seibel (the "Creditors"), prepetition judgment creditors of Mid Atlantic Fund, Inc. ("Mid Atlantic" or "Debtor"), filed a motion on November 20, 1984 seeking an order directing the Trustee in this Chapter 7 bankruptcy proceeding to account for and turn over all monies received pursuant to a certain note and mortgage (collectively the "Fredebaugh Mortgage") and to deliver to the Creditors the original note and mortgage and assignment. The Trustee has provided an accounting but has opposed the Credi-

tors' reclamation request. Based on the findings of fact and conclusions of law set forth below, the Creditors' motion is denied.

## FACTS

Mid Atlantic was a small business investment company licensed by the U.S. Small Business Administration. It extended loans to individuals and companies which did not have access to normal credit markets.

Mid Atlantic failed to pay to the Creditors at maturity two unsecured notes in the aggregate principal amount of $100,000 issued on or about August 15, 1979. The Creditors thereafter brought an action in the Supreme Court of New York and obtained a judgment against Mid Atlantic on or about September 16, 1980 in the amount of $113,087.50. Following efforts to obtain payment of the judgments, the Creditors entered into an agreement with Mid Atlantic on February 6, 1981 (the "Payment Agreement") whereby Mid Atlantic paid $12,500 to the Creditors and also assigned the Fredebaugh Mortgage to them as collateral security for the payment of the judgment. The Fredebaugh Mortgage is a purchase money note and mortgage in the principal amount of $30,000, bearing interest at a rate of 9% per annum made by David L. and Agnes D. Fredebaugh secured by real property located in the Virgin Islands and duly recorded. In return for the cash payment and the assignment of the Fredebaugh Mortgage, the Creditors agreed to cease prosecution of their lawsuit for a period of ninety days.

The Creditors did not record the assignment to them of the Fredebaugh Mortgage prior to the filing of an involuntary Chapter 7 petition against Mid Atlantic less than 90 days later and on April 20, 1981. An order of relief was entered on May 29, 1981. Albert Togut (the "Trustee") was appointed trustee on or about June 17, 1981.

Some time soon after his appointment, the Trustee notified the Creditors that their security interest in the Fredebaugh Mortgage was unperfected and that if they sought to enforce it the Trustee would commence an action to avoid the assignment as a preferential transfer under Bankruptcy Code § 547(b).[1] Subsequently, the Trustee and the Creditors entered into a stipulation, approved by this court on May 23, 1983, extending until June 3, 1984 the time within which the Trustee could institute an adversary proceeding against the Creditors.[2] The Trustee commenced no adversary proceeding within the time fixed by the stipulation.

After the expiration of the extended date and by letters dated August 1 and 20, 1984, the Creditors demanded that the Trustee account to and turn over to them the monies he had received as payments under the Fredebaugh Mortgage. When the Trustee did not respond to the August 1984 letters, the Creditors filed the present motion. The Trustee has possession of the original Fredebaugh Mortgage. After his appointment, the Trustee received all payments

---

1. This case predates the effective date of the Bankruptcy Amendments and Federal Judgeship Act of 1984. The statutory sections are hereafter quoted as applicable to this case without further reference to any subsequent and inapplicable amendment. Bankruptcy Code § 547(b) provides in pertinent part:

"(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—
   "(1) to or for the benefit of a creditor;
   "(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;
   "(3) made while the debtor was insolvent;
   "(4) made

"(A) on or within 90 days before the date of the filing of the petition * * * "

2. The stipulation in its entirety reads:
"IT IS HEREBY STIPULATED between the undersigned parties that an Order may be entered herein extending the time of Albert Togut, as Trustee in Bankruptcy for Mid Atlantic Fund, Inc. to commence any adversary proceeding under Chapter 5 of the Bankruptcy Code against Malcolm Davis and/or Monroe Seibel from June 3, 1983 to, and including, the third day of June, 1984."
Each of the Creditors, individually, and the Trustee affixed his signature.

due under the Fredebaugh Mortgage. After the execution of the Payment Agreement and prior to bankruptcy, Mid Atlantic collected the payments on the Fredebaugh Mortgage. The Creditors never advised the Fredebaughs of the assignment of the Fredebaugh Mortgage to them or requested that the Fredebaughs make payment to them.

## POSITION OF CREDITORS

The Creditors claim that the assignment of the Fredebaugh Mortgage was an outright and absolute assignment to them in payment of their judgment against Mid Atlantic. They assert that the two-year statute of limitation provided by Bankruptcy Code § 546,[3] as extended by the parties' stipulation, now bars the Trustee from taking any action to avoid the assignment of the Fredebaugh Mortgage.[4]

## POSITION OF TRUSTEE

The Trustee asserts several grounds on which he may avoid the unrecorded assignment of the Fredebaugh Mortgage. If the assignment was an absolute one as claimed by the Creditors, the Trustee asserts that he may avoid it as a hypothetical bona fide purchaser of real estate under Bankruptcy Code § 544(a)(3).[5] If, as the Trustee believes, the assignment was only collateral, the Trustee asserts that the Creditors' interest is an unperfected security interest which he may avoid as a hypothetical lien creditor under Code § 544(a)(2).[6] The Trustee also urges that the assignment was plainly preferential under Code § 547 whether it was absolute or conditional.

In response to the Creditors' assertion that Code § 546 bars the Trustee's present assertion of his avoidance powers, the Trustee argues that statute of limitations is inapplicable where, as here, the Trustee is not commencing an action or proceeding but merely relying on Code § 502(d)[7] to cause the disallowance of the Creditors' claim.

## DISCUSSION

■ The court has considered the Creditors' argument that the assignment to

---

3. Bankruptcy Code § 546(a) provides:
"(a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of
"(1) two years after the appointment of a trustee under section 702, 1104, 1163, or 1302 of this title; and
"(2) the time the case is closed or dismissed."
Without the parties' stipulation, the limitations period fixed by Code § 546 would have run less than two weeks later.

4. The Creditors' delay in filing their reclamation motion until after the time fixed in the stipulation had expired was a calculated manuever. The Trustee states without rebuttal that on February 12, 1985 he was advised by Creditors' counsel that the Creditors intentionally waited until after the time expired before making demand so that the Trustee would be time-barred by Code § 546 from commencing a preference action against them.

5. Bankruptcy Code § 544(a)(3) provides:
"(a) The trustee shall have, as of the commencement of the case, and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation incurred by the debtor that is voidable by—

"*  *  *  *
"(3) a bona fide purchaser of real property other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser at the time of the commencement of the case, whether or not such a purchaser and has perfected such transfer exists."

6. Code § 544(a)(2) gives the Trustee the status of
"(2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists
*  *  *  *"

7. Code § 502(d) provides:
"(d) Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 742(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title."

them constituted an outright assignment and finds it unpersuasive.[8] The plain language of the Payment Agreement rebuts their contention. The Payment Agreement provides in relevant part that:

> "WHEREAS Fund [i.e. Mid Atlantic] desires to assign its rights to a note and the mortgage securing that note to the creditors jointly *as collateral* to secure the debt to the creditor * * *
>
> " * * *
>
> "1. Fund hereby assigns to the creditors, jointly, *as collateral* for the debt, the First Priority Purchase Money Mortgage Note in the amount of $30,000 * * and the First Priority Purchase Money Mortgage * * *." (Emphasis added).

The use of the phrase "as collateral" can have no other meaning than that the assignment was intended to be a security device. Moreover, had the parties intended that the assignment be an absolute one, they necessarily would have had to agree on the amount of the judgment which was to be considered paid as the Fredebaugh Mortgage was not cash or a cash equivalent. Agreement would have been required to assign it a present value taking due account of its long-term nature, interest coupon and the value of the real property. There is no such agreement in the Payment Agreement. Moreover, prior to the bankruptcy the Creditors failed to act as if they were the absolute owners of the Fredebaugh Mortgage by recording the assignment or by demanding payment from the mortgagees.

The Creditors have never filed a formal proof of claim in this case. Rule 3002(a) states that "an unsecured creditor or an equity security holder must file a proof of claim in accordance with this rule for the claim or interest to be allowed." The Rule makes no specification as to whether or when a secured creditor must file a claim. The Advisory Committee Note to Bankruptcy Rule 3002(a) states:

> "A secured claim need not be filed or allowed under § 502 or § 506(d) unless a party in interest has requested a determination and allowance or disallowance under § 502."

There is no time limit for the filing of secured claims in a Chapter 7 case short of the closing of the case. *Cf. In re Tarnow,* 749 F.2d 464 (7th Cir.1984). Compare *In re Columbia Ribbon & Carbon Manufacturing Co., Inc.,* 54 B.R. 714 (Bankr.S.D.N.Y. 1985) (Since there is no specification in the Bankruptcy Rules of how long no-notice creditors have to file proofs of claim in order to share *pari passu* with timely claims under Code § 726(a)(2)(C), the court found no time limit existed except the time of final distribution).

In passing on the Creditors' reclamation motion, the court must necessarily consider the Creditors' rights to the Fredebaugh Mortgage. That requires the court to determine whether the Creditors' claim can be allowed as a secured claim to the extent

---

**8.** Whether the assignment was intended to be a present one or a future one is a separate issue. Although the Creditors make the suggestion that he is, the court does not understand the Trustee to be arguing that the assignment was not a present one.

The Creditors also point to a 6-page letter dated August 26, 1982 from the Trustee to one of them, apparently sent in request for information about the status of the case. The letter contains the following paragraph relative to the Fredebaugh Mortgage:

> "8. *Land and building location in St. Thomas, Virgin Island*
>
> "The Debtor has a first purchase money mortgage in the amount of $30,000 against land and a building located in the Virgin Islands. The mortgage was granted by note dated March 7, 1978, at 9% per annum. This mortgage note was assigned to two creditors of the Debtor in early 1981 when the Debtor settled litigation involving the two creditors. The Trustee has informed these creditors of his intention to set aside the transfer. In the meantime, the monthly mortgage payments of $269.92 have been made for each and every month since the Chapter 7 case began."

The Creditors place great stress on the Trustee's use of the phrase "was assigned" and treat it as an admission. This phrase has no significance, in fact, because even now the Trustee does not dispute that an assignment was made. In any event, the phrase must be read in the context of the very next sentence which indicates the Trustee's advice of his intention to set aside the transfer.

of the Fredebaugh Mortgage.[9]  Compare *In re Shumate,* 42 B.R. 462, 465 (Bankr.D. Tenn.1984).

The Trustee asserts that the Creditors' secured claim must be disallowed.  The Trustee relies on Code § 502(d) which provides:

"Notwithstanding subsections (*a* ) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under Sections 522(f), 522(h), 544, 545, 547, 548, 549 or 724(a) of this title, unless such entity or transferee has paid the amount or turned over any such property, for which such entity or transferee is liable under Sections 522(i), 542, 543, 550, or 553 of this title."

The mandatory disallowance provided for by this section is applicable to secured claims as well as unsecured claims.  The definition of claim found in Code § 101(4) makes this clear as it provides that claim means "right to payment, whether or not such right is * * * secured."  *Cf.* Former Bankruptcy Act § 57g; 3 Collier on Bankruptcy (14th Ed.1977), ¶ 57.19[3.2]; 2 Remington on Bankruptcy (1956), §§ 942–943; and *In re Franklin,* 151 F. 642, 18 ABR 218 (D.C.N.C.1907).

■  Here the security sought to be reclaimed from the Trustee's possession by the Creditors is the very property whose transfer to the Creditors the Trustee urges is voidable.  The Trustee has made a *prima facie* showing that the assignment of the Fredebaugh Mortgage was a preferential transfer.  The transfer was plainly for an antecedent debt.  The only new consideration given by the Creditors under the Payment Agreement was forbearance from continuing their suit for 90 days.  Forbearance is insufficient to constitute new value under Code. § 547(a)(2) and will not defeat a preference challenge.  See *In re Duffy,* 3 B.R. 263, 266 (Bankr.S.D.N.Y.1980).  Likewise, the Creditors do not have any defense to the Trustee's claim of priority over their unperfected security interest under Code § 544(a)(2).[10]  The Creditors' secured claim must therefore be disallowed because the Creditors were the recipient of a transfer voidable under Code §§ 544 and 547 unless their Code § 546 statute of limitations argument prevails.

■  There is no dispute that the statute of limitations provided in Code § 546 has expired for the commencement of avoidance actions or proceedings.  Here, however, the Trustee has not commenced an avoidance action but has merely relied defensively on Code § 502(d).  Nor is this mere word parsing as a trustee is not entitled to an affirmative recovery under Code § 502(d).  The purpose of Code § 502(d) is to preclude entities which have received voidable transfers from sharing in the distribution of the assets of the estate unless and until the voidable transfer has been returned to the estate.  The idea of Code

---

**9.**  An allowed claim is a secured claim to the extent of the value of the creditor's interest in property of the estate and an unsecured claim to the extent that value is less than the amount of the claim.  See Bankruptcy Code § 506(a).

To the extent the Creditors had an unsecured claim because the collateral had a value less than the debt owed to them it is time-barred.  The time limit fixed by Bankruptcy Rule 3002(c) for the filing of unsecured claims has long passed.  To the extent of the value of any avoided transfer, the Creditors may file an unsecured proof of claim within the time limits set by Bankruptcy Rule 3002(c)(3).  However, any such claim would not appear to be allowable by virtue of Code § 502(d), discussed *infra,* unless the Creditors also returned the $12,500 paid to them, which was also a preferential transfer.

**10.**  The court need not reach the issue of the Trustee's avoidance rights as a bona fide purchaser which requires interpretation of Virgin Islands law.  The relevant provision is found in V.I. CODE ANN., Title 28, § 124, which provides:

"Every conveyance of real property hereafter made within the Virgin Islands which is not filed for record shall be void against any subsequent innocent purchaser in good faith and for a valuable consideration of the same real property, or any portion thereof, whose conveyance is first duly recorded."

See also V.I.CODE ANN., Title 28, § 1 (Defining "conveyance").  ·

§ 502(d) is not new with the Bankruptcy Code and was found in § 57g of the prior Bankruptcy Act. About the purpose of former § 57(g), the leading treatise stated:

"More precisely, however, what hinders allowance is not so much the preference itself as the failure to surrender it. This apparently formalistic distinction is of great practical significance. It reveals the purpose, the meaning and the limited scope of § 57g, which may best be summarized in the words: *'Restoration, not punishment, is the object of this law.'* * * * The [Bankruptcy] Act evidences a natural desire to restore the equality of a distribution disturbed by the illicit preference, transfer, etc."

3 Collier on Bankruptcy (14th Ed.1977), ¶ 57.19 at 307–308. The legislative history of Code § 502(d) states that it was derived from existing law. H.R. No. 95–595 at 354; S.R. 95–989 at 64, U.S.Code Cong. & Admin.News 1978, p. 5787.

It had been squarely held under the former Bankruptcy Act that a trustee could raise an otherwise time-barred voidable transfer so as to cause disallowance of a claim under § 57g. See *In re Meredosia Harbor & Fleeting Service, Inc.*, 545 F.2d 583 (7th Cir.1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977); *In re Cushman Bakery,* 526 F.2d 23 (1st Cir.1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); *In re Supreme Synthetic Dyers, Inc.*, 3 B.R. 189 (Bankr.E.D.N.Y.1980); and *In re Hudson Feather & Down Products, Inc.*, 22 B.R. 247 (Bankr.E.D.N.Y.1982). In *Meredosia Harbor,* the court stated:

"Section 11(e) is not applicable here where the trustee filed no suit on behalf of the debtor. Rather the lien holders asserted their claims against the trustee. As the bankruptcy referee observed, 11(e) 'does not come into play when (the trustee) defends money in his hands from creditors whose claim would be preferential if successful.' The trustee's de-

fense was in the nature of recoupment and therefore not barred by § 11(e)." 545 F.2d at 590.

This court can discern no policy or statutory reason not to follow the same rule under the Bankruptcy Code.[11] The peremptory language of Code § 502(d) states that "the court *shall* disallow" the claim. There is no stated time limit on when the trustee may object to a claim. See Bankruptcy Rule 3007. See also 3 Collier on Bankruptcy (15th Ed.1985), ¶ 502.01[3]. It has been held that the only limit is the equitable doctrine of laches. See *In re Cushman Bakery, supra.* Moreover, the defensive use of barred claims is common outside the bankruptcy context. See, e.g., N.Y.C.P.L.R. § 203(c) ("A defense or counterclaim is not barred if it was not barred at the time the claims aserted in the complaint were interposed, except that if the defense or counterclaim arose from the transactions, occurrences, or series of transactions or occurrences, upon which a claim asserted in the complaint depends, it is not barred to the extent of the demand in the complaint notwithstanding that it was barred at the time the claims asserted in the complaint were interposed."); 35 N.Y. Jur., Limitations and Laches, § 9; 51 Am. Jur.2d, Limitation of Actions, § 76 ("The ultimate purpose of a limitation law is to bar actions rather than to suppress or deny matters of defense. Hence, as a general rule, limitation statutes are not applicable to defenses, but apply only where affirmative relief is sought." At 655); and 3 Moore's Federal Practice (2d Ed.), ¶ 13.11. The rationale behind permitting the defensive use of an otherwise barred claim was stated by the court in *Liter v. Hoagland,* 204 S.W.2d 219, 305 Ky. 329 (1947) as follows:

"The statute of limitation is intended to close the door of the courts to the bringing of suits on stale claims. It is intended to be used as a blanket to

11. The argument that the use of the word "avoidable" in Code § 502(d) is intended to incorporate the statute of limitations fixed by Code § 546 seems to be grasping at straws when

it is considered how much more directly and plainly the idea could have been expressed by using the word "timely" in front of avoidance or adding a reference to Code § 546.

smother any faint respiration of moribund claims of plaintiffs in regular causes of action or those of defendants asserted· by counterclaims. Limitation law is not intended to bar nor smother any mere defense of a party so as to compel him to stand dumb and mute while his antagonist bludgeons his head with every weapon in the book of legal, offensive warfare. For, so long as the court will hear a plaintiff's cause of action, they will also hear a defendant's retort of vindication for the attitude he has assumed, provided always that the cause of action and the asserted defense are closely and logically related in a short of legal affinity." 204 S.W.2d at 220.

▉ A trustee is limited under Code § 502(d) to offsetting the claim asserted by the creditor. When, as here, the creditor also received a preference beyond that amount, the trustee remains unable to recover the additional preference without the commencement of an action or adversary proceeding, which commencement is barred by the statute of limitations.[12]

▉ When Code § 502(d) is used to disallow the claim of a secured creditor, the lien of the creditor becomes void.[13] Code § 506(d) as applicable to this case provides:

"(d) To the extent that a lien secures a claim against the debtor that is not an allowed secured claim, such lien is void unless

"(1) a party in interest has not requested that the court determine and allow or disallow such claim under section 502 of this title; or

"(2) such claim was disallowed only under section 502(e) of this title."

Here the Creditors' secured claim is not an allowed secured claim and it has been disallowed other than under Code § 502(e). Therefore the lien securing the Creditors' claim is void under Code § 506(d). As the lien is void, the Fredebaugh Mortgage, including proceeds, property which is in the possession of the Trustee, is free of the claim of the Creditors and belongs to the estate alone to be distributed in accordance with the distribution provisions of Code § 726.

The Creditors' motion for turnover is denied.[14] The Fredebaugh Mortgage and its proceeds are declared to be solely property of the estate. The Creditors may file a claim to the extent of the avoided transfer as provided by Bankruptcy Rule 3002(c)(3).

It is so ordered.

12. A trustee cannot afford to be complacent about the expiration of the Code § 546 period. The Trustee's ability to recover the $12,500 payment has been lost. The inability of a trustee to obtain an affirmative judgment makes it apparent that allowing the defensive use of avoiding powers after the Code § 546 limitation has expired does not afford complete relief to the trustee. For example, if the property voidably transferred is not in the trustee's actual or constructive possession, he may have no means of causing it to be transferred to the estate. Here the Trustee was able to utilize Code § 502(d). See discussion at Footnote 13 and related text.

13. Under the former Bankruptcy Act, it appears that § 57g itself resulted in the voiding of the lien. See *In re Meredosia Harbor, supra.*

14. The definition of claim, as modified by Code § 102(2), includes a claim against property of the debtor. A claim is still a claim even if disputed. See Code § 101(4)(A). Thus, the Creditors' assertion of an outright assignment of the Fredebaugh Mortgage which is disputed by the Trustee would also have been a claim subject to the allowance process, including the application of Code § 502(d). Such a claim would not appear to be a secured claim. See Code §§ 506(a); 101(31) (Definition of "lien"). If it is treated as an unsecured claim, it would not have been allowable as it was not timely filed. See and compare *In re Black & Geddes, Inc. (Associated Container Transportation (Australia) Ltd. v. Trustee),* 30 B.R. 389 (Bankr.S.D.N.Y. 1983) (Bankruptcy Court found creditor could not amend timely filed proof of claim to assert entitlement to a constructive trust claim after the trustee had made his first distribution to creditors), *affirmed,* 58 B.R. 547, S.D.N.Y. (D.J. Connor) (Unreported Decision) (District Court found constructive trust claim was a claim required to be filed by bar date and therefore time-barred.). This court need not decide how such a claim should be treated nor need this court reach the question of how and whether avoidance of the assignment would result upon disallowance of the claim. See Footnote 13 and related text.