In re McLEAN INDUSTRIES, INC., Debtor.

UNITED STATES LINES (S.A.), INC., Plaintiff–Appellee,

v.

UNITED STATES of America, Defendant–Appellant.

No. 1992, Docket 94–5018.

United States Court of Appeals, Second Circuit.

Argued July 19, 1994.

Decided July 28, 1994.

John T. Stemplewicz, Washington, DC (Frank W. Hunger, J. Christopher Kohn, Tracy T. Whitaker, Civ. Div., U.S. Dept. of Justice, of counsel), for defendant-appellant.

Robert D. Drain, New York City (Paul, Weiss, Rifkind, Wharton & Garrison, of counsel), for plaintiff-appellee.

Before: WALKER, McLAUGHLIN, and JACOBS, Circuit Judges.

PER CURIAM:

The United States of America, acting through its agency the Maritime Administration ("MARAD"), appeals a judgment of the United States District Court for the Southern District of New York (Kevin Thomas Duffy, *Judge*), 162 B.R. 410 (S.D.N.Y.1993), which affirmed the order of the Bankruptcy Court (Cornelius Blackshear, *Bankruptcy Judge*), 132 B.R. 247 (Bankr.S.D.N.Y.1991), granting summary judgment to the plaintiff USL Reorganization Trust, successor in interest to United States Lines (S.A.), Inc. ("USL"), on the basis that a pre-petition transfer to MARAD constituted a voidable preference under 11 U.S.C. § 547. For the reasons that follow, we reverse that judgment and remand for further proceedings consistent with this opinion.

We recount only those facts relevant for the disposition of this appeal and direct those with greater curiosity to the thorough published opinions in the bankruptcy and district courts. USL owned three ships in which MARAD had a first priority, but undersecured, mortgage. These ships sat dormant in 1986, until another shipping company, Lykes Brothers Steamship Company ("Lykes"), proposed to charter these vessels from USL. USL's financial agreements with MARAD required that USL obtain MARAD's approval for any such arrangement. USL and Lykes sought MARAD's approval of the deal, which would have preserved certain tax benefit transfer leases ("TBT leases") for USL as well as provided operating subsidies for Lykes. MARAD agreed to consent provided that USL assign the charters to MARAD. Under the assignment devised by the parties, Lykes would pay the "charter hire," that is, the fees for use of the ships, to an intermediary party, Chemical Bank. As long as MARAD received no demand upon its mortgage guarantees, Chemical's instructions were to forward the fees to USL. However, upon receipt by Chemical of notice from MARAD of such a demand, Chemical was to hold further payments from Lykes pending MARAD's instructions. This deal, consummated on November 4, 1986, is the transfer that USL seeks to avoid as a preference under § 547(b) of the Bankruptcy Code.

On November 24, 1986, USL filed for reorganization under Chapter 11 of the Bankruptcy Code. In early 1987, MARAD received a demand upon its mortgage guarantees and notified Chemical. In accordance with the November 4, 1986 agreement, Chemical thereafter retained all fees paid by Lykes. Recognizing that continuation of the charters would benefit USL by maintaining the TBT leases, MARAD and USL sought to enter a stipulation in the bankruptcy court memorializing the charters. However, the bankruptcy court never gave its required approval because of an unrelated objection to the pact advanced by Chemical. At the end of the initial one-year charter term of Lykes, MARAD agreed to extend the charter and accompanying subsidies for two more years.

In May 1989, the bankruptcy court confirmed USL's plan of reorganization, under which USL, as debtor-in-possession, formally assumed the charters pursuant to 11 U.S.C. § 365. The plan made no specific mention of the charter assignment being voidable or the charter hire being available to USL's creditors.

Several months after confirmation of the reorganization plan, and two years and ten months after its Chapter 11 filing, USL brought this avoidance action pursuant to 11 U.S.C. § 547. MARAD objected to the avoidance action on numerous grounds, including the argument that USL waited too long to bring the avoidance action and should be estopped from attempting to avoid the charter assignment. MARAD argued that USL's belated change of position prejudiced MARAD during the pendency of the reorganization. By consenting to the charters, and their subsequent extension, MARAD preserved for USL the benefit of the TBT leases as well as expended over $36 million in subsidies to Lykes. Further, MARAD contended that USL's agreement with MARAD to memorialize the charter assignment in the bankruptcy court by stipulation, though never formally ratified by that court, should estop any attempt to avoid the assignment.

USL responded to MARAD's timeliness argument by citing § 546(a) of the Code, which states that an avoidance action may be brought no later than the earlier of "(1) two

years after the appointment of a trustee" or "(2) the time the case is closed or dismissed." 11 U.S.C. § 546(a). Because USL was a debtor-in-possession, no formal "trustee" was appointed. Thus, relying principally upon *Korvettes, Inc. v. Sanyo Electronics (In Re Korvettes, Inc.)*, 67 B.R. 730, 734 (S.D.N.Y. 1986), which held that § 546(a)(1) did not apply in debtor-in-possession cases, USL argued that § 546(a)(2) allowed an avoidance claim to be commenced anytime before its case was "closed or dismissed." The bankruptcy court agreed, citing *Korvettes*, and held that USL's claim was timely. *See* 132 B.R. at 256.

In the district court, MARAD reiterated its timeliness/estoppel argument. Although not formally raising § 546(a)'s statute of limitations provision, MARAD asserted in its brief before the district court that USL was estopped from challenging the assignment by its continued reassurances and by waiting "until it was too late for MARAD to pursue available alternatives." Finally, in its opening brief to this court, MARAD once again pressed its claim that "USL [should be] estopped from pursuing its avoidance claims where it failed to act earlier."

A few days after MARAD submitted its opening brief, this court decided *U.S. Brass & Copper Co. v. Caplan (In re Century Brass Products, Inc.)*, 22 F.3d 37 (2d Cir. 1994). After a careful review of the statutory language and legislative history, we held for the first time in this Circuit that the "appointment of a trustee" in § 546(a)(1) was equivalent to the filing of a petition in debtor-in-possession cases (in which there is no trustee). *Id.* at 40. Thus, *Century Brass* overruled *Korvettes* and similar lower court authority that had held that § 546(a)(1)'s two-year limitation did not apply to debtor-in-possession cases.

MARAD promptly notified this panel and USL of the *Century Brass* decision in a letter submitted pursuant to Fed.R.App.P. 28(j), thereby allowing USL to address the implications of *Century Brass* in its brief. USL, apparently recognizing that the rule announced in *Century Brass* would control this case, argued that MARAD waived its right to rely on § 546(a) by failing to specifi-

cally press this claim throughout the litigation. Thus, the issue we must decide is whether MARAD adequately preserved the § 546(a) statute of limitations issue for consideration on this appeal. We believe that it did.

■ We note at the outset "our review of the district court's decision is plenary," and we thus "independently examine the bankruptcy court's decision, applying the clearly erroneous standard to findings of fact and *de novo* review to conclusions of law." *Klein v. Civale & Trovato, Inc. (In re: The Lionel Corp.)*, 29 F.3d 88, 89 (2d Cir.1994).

■ In this Circuit, we reserve "considerable discretion" to review purely legal questions not formally raised in the district court. *See Austin v. Healey*, 5 F.3d 598, 601 (2d Cir.1993), *cert. denied,* — U.S. ——, 114 S.Ct. 1192, 127 L.Ed.2d 542 (1994); *see also United States v. 16.03 Acres of Land,* 26 F.3d 349, 353–54 (2d Cir.1994) (same); *Bornholdt v. Brady,* 869 F.2d 57, 68 (2d Cir.1989) (same). Moreover, we have made plain that "[a]rguments made on appeal need not be identical to those made below if they involve only questions of law and additional findings of fact are not required." *A.I. Trade Finance v. Petra Bank,* 989 F.2d 76, 80 (2d Cir.1993) (citing *Vintero Corp. v. Corporacion Venezolana de Fomento,* 675 F.2d 513, 515 (2d Cir.1982)).

■ In this case, we believe that MARAD adequately preserved its right to press the § 546(a) statute of limitations claim on this appeal. Since the outset of USL's preference avoidance claim, MARAD has consistently argued that it has been prejudiced by USL's delay in bringing the action. MARAD's argument in the bankruptcy court was rebuffed on the authority of *Korvettes*. MARAD repeated its plea before the district court and was similarly turned away. MARAD reiterated this claim for a third time in this court days before we handed down *Century Brass*. Although we fully appreciate that MARAD did not precisely assert its timeliness defense as one under the statute of limitations, the fact that the timeliness of the avoidance action has been in the case from the outset removes any hesitation we

might have in exercising our discretion to consider the purely legal question presented by MARAD's § 546(a) claim.

 On the authority of *Century Brass*, we hold that USL's preference avoidance action was not brought within the applicable two-year limitations period and therefore reverse the judgment of the district court. We express no view as to the correctness of the other rulings of the courts below.

USL argues that even if *Century Brass* applies, 11 U.S.C. § 502(d) still prevents MARAD from reaping the alleged benefit of the assignment. Section 502(d) states:

> Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550, or 553 of this title or that is a transferee of a transfer avoidable under section 522(f), 522(h), 544, 545, 547, 548, 549, or 724(a) of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 522(i), 542, 543, 550, or 553 of this title.

Section 502(d) requires a court to disallow an entity's claim against the bankruptcy estate if the estate is entitled to recover property from that entity, such as because of a voidable preference, but that entity has failed to first transfer this property back to the bankruptcy estate. *See, e.g., Campbell v. United States (In re Davis)*, 889 F.2d 658, 662 (5th Cir.1989), *cert. denied*, 495 U.S. 933, 110 S.Ct. 2175, 109 L.Ed.2d 504 (1990). USL argues that the timeliness of its preference claim is irrelevant for the purposes of § 502(d), and that MARAD cannot benefit from its alleged preference and still make other claims against USL. *Compare In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 610–11 (Bankr.S.D.N.Y.1986) (holding that two-year limitation period did not prevent trustee from relying defensively on § 502(d)) *with In re Marketing Assocs. of Am., Inc.*, 122 B.R. 367, 369 (Bankr.E.D.Mo.1991) (explicitly rejecting *Mid Atlantic* and holding that the plain language of § 502(d) did not permit defensive reliance on an otherwise time-barred preference). Because this issue has not been adequately briefed in this court and may require facts outside of the record, we express no opinion on this issue but remand to the bankruptcy court for the limited purpose of considering in the first instance USL's argument based upon § 502(d).

Reversed and remanded.