**In re McLEAN INDUSTRIES, INC., et al., Debtors.**

**UNITED STATES LINES, INC. and United States Lines (S.A.), Inc., Reorganization Trust, as Successor in Interest to United States Lines (S.A.) Inc., Plaintiffs,**

v.

**UNITED STATES of America and Chemical Bank, in its capacity as depository, Defendants.**

**95 CIV. 6898 (DLC).**

United States District Court, S.D. New York.

June 6, 1996.

---

Frank W. Hunger, Assistant Attorney General, J. Christopher Kohn, Tracy J. Whitaker, John T. Stemplewicz, Civil Division, United States Department of Justice, Washington, DC, for Defendants–Appellants.

Robert D. Drain, Cynthia E. Cunningham, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Plaintiffs–Appellees.

### *OPINION & ORDER*

COTE, District Judge:

The United States of America, on behalf of the Maritime Administration of the Department of Transportation ("MARAD") brings this appeal from the Bankruptcy Court's Order entered June 27, 1995. The primary issue presented by this appeal is whether MARAD, the recipient of an avoidable preference from the debtor in this action, must disgorge the preference before pursuing a

claim against the bankruptcy estate, even though the Trustee is time-barred from pursuing an avoidable preference action against MARAD. For the reasons stated below, this Court finds that Section 502(d) of Title 11, United States Code (the "Bankruptcy Code") allows the Trustee to prevent entities which have received voidable transfers from sharing in the estate's distribution unless the transfer is returned to the estate.

## BACKGROUND

The facts of this case are fully set out in the Bankruptcy Court's opinions at *United States Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.)*, 132 B.R. 247 (Bankr.S.D.N.Y.1991), and *United States Lines, Inc. and United States Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.)*, 184 B.R. 10 (Bankr.S.D.N.Y.1995). Familiarity with those opinions is presumed. I outline below sufficient undisputed facts to give context to the issues presented here.

Prior to its Chapter 11 filing, United States Lines (S.A.), Inc. (the "Debtor"), together with its affiliate United States Lines, Inc., operated the largest United States flag shipping business and was one of the largest cargo carriers in the world. Three of the Debtor's vessels (the "Vessels") were built and later modified with financing guaranteed under United States government programs administered by MARAD and secured by first and second priority preferred mortgages on the Vessels (the "MARAD Mortgages").

In 1986, the Debtor proposed entering into an agreement to bareboat charter the Vessels to Lykes Brothers Steamship Company ("Lykes"). MARAD agreed to waive a negative covenant prohibiting the Debtor from bareboat chartering the Vessels without MARAD's consent on the condition that the Debtor grant MARAD a security interest in the Vessel charters and the charter hire. Therefore, when the Debtor and Lykes entered into three bareboat charters on November 4, 1986, the Debtor, Lykes and MARAD also entered into a Charter Assignment and Agreement (the "Assignment Agreement") pursuant to which the Debtor granted MARAD a first priority security interest in the Lykes charters and charter hire payments to the Debtor as additional collateral for the approximately $20.5 million of aggregate obligations then secured by the MARAD Mortgages. It was the grant of this security interest that the Bankruptcy Court and the District Court in prior proceedings have determined to be a preference under Section 547 of the Bankruptcy Code. In connection with the grant of the security interest in the charter hire, MARAD and Chemical Bank entered into a ·Depository Agreement pursuant to which Chemical Bank agreed to receive the charter hire from Lykes as agent for MARAD and to transfer it to the Debtor provided that MARAD had made no prior demand for the charter hire under the debt instruments.

On November 24, 1986, less than three weeks after executing the documents which granted the security interest to MARAD, the Debtor filed for protection under Chapter 11 of the Bankruptcy Code. On April 17, 1987, when Chemical Bank received MARAD's post-bankruptcy instructions to pay the charter hire to MARAD (the automatic stay of Section 362(a) of the Bankruptcy Code having taken effect), Chemical Bank ceased making payments to the Debtor and refused to pay MARAD without a Bankruptcy Court Order. No such order was ever entered, and currently Chemical Bank has approximately $12 million on deposit from the charter hire.

On May 16, 1989, the Bankruptcy Court entered its Confirmation Order confirming the plan of reorganization ("the Plan") proposed by the United States Lines, Inc. & United States Lines (S.A.) Inc. Reorganization Trust (the "USL Trust") and establishing certain post-confirmation procedures. The Confirmation Order provided that the USL Trust would "retain and may enforce any and all claims of any U.S. Lines and U.S. Lines (S.A.) or their chapter 11 estates" for the benefit of unsecured creditors pursuant to Section 1123(b)(3) of the Bankruptcy Code. The Court retained jurisdiction to determine the allowance of claims upon objection by the Debtor or the USL Trust and to adjudicate any causes of action, including avoidance actions under the Bankruptcy Code, brought by the Debtor or the USL

Trust. The Confirmation Order also provided for a stay of all actions against the Debtor's property, except as specifically provided in the Plan. The Charter hire funds in the depository account remain subject to this stay and the stay under Section 524(a) of the Bankruptcy Code. They are invested, at interest, as instructed by the Trustee of the USL Trust.

One of the claims filed against the estate was claim No. 11222 (the "Claim"), filed by MARAD on December 31, 1987, asserting that the Debtor owed MARAD $20,891,618.55 on a secured basis. MARAD sought in the Claim to apply or set off the amount then held ($2,353,933.10) in the depository account at Chemical Bank as collateral. The Debtor began this adversary proceeding on September 18, 1989, pursuant to the Debtor's Plan, seeking, among other relief, an order (1) avoiding the grant of a security interest in the charter hire to MARAD as a preference under Section 547 of the Bankruptcy Code, and (2) disallowing MARAD's Claim unless MARAD relinquishes, for the benefit of all of the unsecured creditors, its claim to any property received pursuant to such preferential assignment, including all amounts on deposit in the USL Trust's Chemical Bank account.

On September 11, 1991, the Bankruptcy Court granted the Debtor's motion for summary judgment and denied MARAD's motion for summary judgment, finding that the grant of a security interest in the charter hire was an avoidable preference under Section 547 of the Bankruptcy Code. *See United States Lines (S.A.), Inc. v. United States (In re McLean Industries, Inc.)*, 132 B.R. 247 (Bankr.S.D.N.Y.1991). On December 17, 1993, the Honorable Kevin T. Duffy, the Judge to whom this case was then assigned, affirmed. *United States Lines (S.A.), Inc. v. United States (In re McLean Industries, Inc.)*, 162 B.R. 410 (S.D.N.Y.1993). On appeal, the Second Circuit held that the Debtor's preference avoidance action was time-barred under the recently-decided *United States Brass & Copper Co. v. Caplan (In re Century Brass Prods.)*, 22 F.3d 37 (2d Cir. 1994). *See In re McLean Industries, Inc.*, 30 F.3d 385, 388 (2d Cir.1994), *cert. denied,* ——

U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 880 (1995). The Second Circuit therefore reversed the District Court Order, but it remanded the proceeding to the Bankruptcy Court to determine whether MARAD's claim should nonetheless be disallowed under Section 502(d) of the Bankruptcy Code. *Id.*

On June 9, 1995, the Bankruptcy Court issued a Memorandum Decision in favor of the USL Trust, disallowing MARAD's secured claim pursuant to Section 502(d) of the Bankruptcy Code. *In re McLean Industries, Inc.*, 184 B.R. 10 (Bankr.S.D.N.Y.1995). On June 27, 1995, the Clerk of the Bankruptcy Court docketed the Order from the Bankruptcy Court's opinion. MARAD did not file a notice of appeal from the Order within the ten days prescribed by Bankruptcy Rule 8002(a). Instead, on July 13, 1995, six days after the notice was due, MARAD brought, by way of an order to show cause, a motion for enlargement of time to file a late appeal, or alternatively, to deem an earlier objection to an order proposed by USL Trust to have been a notice of appeal. Following a hearing on July 24, 1995, the Bankruptcy Court issued an Order granting MARAD's enlargement motion.

This Court's appellate jurisdiction is invoked pursuant to 28 U.S.C. § 158(a)(1). MARAD has appealed the Bankruptcy Court's decision on the avoidable preference, and the USL Trust has appealed the Bankruptcy Court's granting of MARAD's enlargement motion. I consider the latter issue first.

### DISCUSSION
### Timeliness of MARAD's Appeal

The USL Trust argues that the Bankruptcy Judge erred as a matter of law and/or abused its discretion in granting MARAD's motion under Bankruptcy Rule 8002(c) for an enlargement of time to file a notice of appeal. On appeal the Bankruptcy Court's findings of fact are reviewed under a clearly erroneous standard; its conclusions of law are review *de novo*. *In re Ionosphere Clubs, Inc.*, 922 F.2d 984, 988 (2d Cir.1990), *cert. denied,* 502 U.S. 808, 112 S.Ct. 50, 116 L.Ed.2d 28 (1991).

Bankruptcy Rule 8002(a) states that a "notice of appeal shall be filed within ten days of the date of the entry of the ... order ... appealed from." Fed.R.Bankr.P. 8002(a). Rule 8002(c), however, authorizes bankruptcy courts to extend the ten day window within which to appeal as follows:

> [A] request made no more than 20 days after the expiration of the time for filing a notice of appeal *may be granted upon a showing of excusable neglect* if the judgment or order appealed from does not authorize the sale of any property or the obtaining of credit or the incurring of debt under § 364 of the Code, or it is not a judgment or order approving a disclosure statement, dismissing a case, or converting the case to a case under another chapter of the Code.

(Emphasis supplied). In addressing the excusable neglect standard contained in another portion of the Bankruptcy Rules, the Supreme Court has observed that a determination of "excusable neglect" is "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission." *Pioneer Inv. Servs. v. Brunswick Assocs.*, 507 U.S. 380, 395, 113 S.Ct. 1489, 1498, 123 L.Ed.2d 74 (1993)[1]. The relevant circumstances include, but are not limited to:

> the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

*Id.*

Each of these factors, with the exception of the reason for the delay, weighs in favor of MARAD. First, there is no issue of bad faith; the record is devoid of any evidence or allegation of it and therefore this factor favors MARAD. Second, a delay of six days was minimal and caused no adverse impact on any judicial proceedings. Third, there is no evidence in the record of prejudice to U.S. Lines. Indeed, the Bankruptcy Judge found that

> It was clear to everyone that this case was going to be appealed. [MARAD] was looking to appeal from a real Order[2] so that he could craft a better appeal.... [MARAD] was in contact with chambers ... [and] with counsel[.] [MARAD] was clearly diligent in pursuing this matter....

Fourth, in contrast to the other factors, the reason for the delay is a fairly close question. On balance, this factor ultimately weighs against MARAD. MARAD contends that the reasons for the delay are: 1) the Clerk of the Bankruptcy Court did not serve notice of the entry of judgment as required by Bankruptcy Rule 9022(a); and 2) MARAD mistakenly believed it had been granted "at least a one-week adjournment of the presentation of the proposed order," but in fact the Bankruptcy Court signed the Order the next day. Although there is some basis in the record to support the conclusion that MARAD's mistaken belief was reasonable under the circumstances, MARAD could have done any number of things to ensure that it had indeed secured the one-week adjournment. It did none of them. Contrary to U.S. Lines' argument, however, the reason for the delay is not the "overriding factor" in the *Pioneer* test under all circumstances. *See Pioneer*, 507 U.S. at 397–99, 113 S.Ct. at 1499–1500. Rather, the test itself and the relevant case law suggest only that it *may* be the pivotal factor, depending on the particular circumstances presented. *See, e.g., Weinstock v. Cleary, Gottlieb, Steen & Hamilton*, 16 F.3d 501, 503 (2d Cir.1994) (In construing Rule 4(a)(5), Fed.R.App.P., some *Pioneer* factors favored the negligent party, but "most prominent in *this* case" was the reason for delay.) (emphasis supplied). In this case, however, I find that the reason for the delay is not pivotal in light of other relevant factors. As the Bankruptcy Judge observed, this is a "difficult motion ... on the edge of discretion." Nevertheless, based upon the forego-

---

1. Although the Court in *Pioneer* defined the standard for "excusable neglect" in the context of Bankruptcy Rule 9006(b) and a late filed claim, it drew upon the construction of that term not only in the Bankruptcy Rules but also in the Federal Rules of Civil Procedure. Consequently, the fac-

tors listed in *Pioneer* apply with equal force to Bankruptcy Rule 8002(c).

2. The Bankruptcy Judge had ruled but had not entered a formal Order.

ing I find that, under the circumstances, MARAD's neglect was excusable, and I proceed to the merits of the appeal.

### Disallowance of the MARAD Claim

■ The principal issue on this appeal is whether the Bankruptcy Court erred in holding that the USL Trust may invoke Section 502(d) of the Bankruptcy Code to disallow the MARAD claim.[3] The MARAD claim, which is for over $20,000,000, arises from its Mortgages on the three Vessels. MARAD seeks to the apply the amount held in the Chemical Bank depository account, which is the proceeds from the charter of those Vessels and which currently amounts to approximately $12,000,000, as an offset to its claim. MARAD claims a right to those funds under the Assignment Agreement, which the Bankruptcy Court and this Court have determined to be a preferential transfer. The Trustee, who seeks instead to use the Chemical Bank account funds for unsecured creditors, did not bring a timely preference action to recoup the funds MARAD received preferentially. Faced now, however, with a claim on the estate by MARAD, the Trustee seeks to use Section 502(d) defensively, disallowing the claim of a secured creditor who insists on retaining the benefits of a preferential transfer. Consequently, the issue on this appeal

is whether the Bankruptcy Court erred by holding that the USL Trust may invoke Section 502(d) of the Bankruptcy Code to disallow the Marad Claim even though the Trust did not pursue a preference action within two years of the appointment of the Trustee and is thus time-barred under Section 546(a) of the Bankruptcy Code from pursuing one now.[4] As an issue of law, the Bankruptcy Court's holding is reviewable *de novo*. *In re Maxwell Newspapers, Inc.*, 981 F.2d 85, 89 (2d Cir.1992).

Section 502 of the Bankruptcy Code governs the allowance and disallowance of claims against a debtor's estate. Section 502(d) provides in relevant part:

> *[T]he court shall disallow any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547 ... of this title, unless such entity or transferee has paid the amount ... for which such entity or transferee is liable....*

11 U.S.C. § 502(d) (emphasis supplied). This section thus requires a claimholder to first return any transfer it has received that is preferential under Section 547[5] before receiving payment on its claim.

Few courts have addressed the issue of whether "defensive" use may be made of

**3.** Based on some procedural confusion following the Second Circuit's remand of this adversary proceeding "to the bankruptcy court" for consideration of USL Trust's argument in favor of defensive use of Section 502(d), *In re McLean Indus., Inc.*, 30 F.3d 385, 388 (2d Cir.1994), MARAD argues that this Court lacks jurisdiction to hear this appeal. Despite the remand language in the Second Circuit's opinion, the Clerk of the Second Circuit issued the mandate to the *District* Court. Nevertheless, the parties and the Bankruptcy Court treated the remand as properly before the Bankruptcy Court. After the Bankruptcy Court issued its opinion and the parties stipulated to a briefing schedule for this appeal, Judge Duffy on October 11, 1995, issued an Order remanding this proceeding to the Bankruptcy Court. On October 26, 1995, Judge Duffy issued a an Order vacating the October 11 Order as "unnecessary." MARAD now argues that, because the Bankruptcy Court issued its opinion before Judge Duffy's October 11 Order, the Bankruptcy Court lacked jurisdiction when it entered its decision and that this Court therefore lacks jurisdiction over the appeal.

MARAD acknowledges that the problem could easily be resolved if the Bankruptcy Court were to reenter its Order. (Such an Order would also

have the salutary effect from MARAD's perspective of mooting the issue of its late appeal.) No such Order is necessary, however. Under the General Order of Reference of this Court dated July 10, 1984, the Clerk's mandate from the Second Circuit resulted in an automatic reference to the Bankruptcy Court. *See Collier on Bankruptcy*, ¶ 3.01[2][a] (15th ed. 1995).

**4.** Section 546 of the Bankruptcy Code provides in relevant part:

> (a) An action or proceeding under section 544, 545, 547, 548, or 553 of this title may not be commenced after the earlier of—
> (1) two years after the appointment of a trustee under section 702, 1104, 1163, 1302, or 1202 of this title; or
> (2) the time the case is closed or dismissed.

11 U.S.C. § 546(a).

**5.** Section 547 provides in pertinent part that

> the trustee may avoid any transfer of an interest in of the debtor in property—...
> (4) made—
> (A) on or within 90 days before the date of the filing of the petition.

Section 502(d). The courts that have addressed the issue have divided over it, although the majority have permitted defensive use of Section 502(d), following the well-reasoned approach of Bankruptcy Judge Abram in *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604 (Bankr.S.D.N.Y.1986). *See, e.g., In re KF Dairies, Inc.*, 143 B.R. 734, 736 (9th Cir. BAP 1992); *In re Stoecker*, 143 B.R. 118, 131 (Bankr.N.D.Ill.), *aff'd*, 143 B.R. 879 (N.D.Ill.1992); *In re Chase & Sanborn Corp.*, 124 B.R. 368, 370 (Bankr.S.D.Fla.1991); *In re Minichello*, 120 B.R. 17, 19 (Bankr. M.D.Pa.1990). *But see In re Marketing Associates of America, Inc.*, 122 B.R. 367, 369 (Bankr.E.D.Mo.1991) (preference not "avoidable" unless brought within time limits prescribed by Section 546(a)(1)); *In re Marketing Resources Int'l Corp.*, 35 B.R. 353, 356 (Bankr.E.D.Pa.1984) (same).

Judge Abram in *In re Mid Atlantic* examined the plain language of Section 502, its pre-Code predecessor, Section 57g of the prior Bankruptcy Act and the case law it spawned, and the policy reasons supporting defensive use of Section 502. *See Mid Atlantic*, 60 B.R. at 609–611. Other courts have reached the same holding after engaging in a similarly searching inquiry. *See In re KF Dairies*, 143 B.R. at 735–737; *In re Stoecker*, 143 B.R. at 131–138. For the reasons that follow, I conclude that the Bankruptcy Court did not err in permitting defensive use of Section 502(d).

■ The appropriate starting point is the text of statute itself. *Pennsylvania Dept. of Pub. Welfare v. Davenport*, 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–131, 109 L.Ed.2d 588 (1990). If the meaning of a statute, such as the Bankruptcy Code, is clear on its face, the plain meaning controls and the text of the statute is the end of the inquiry as well. *See, e.g., U.S. v. Ron Pair Enters., Inc.*, 489 U.S. 235, 242, 109 S.Ct. 1026, 1030, 103 L.Ed.2d 290 (1989). As noted above, Section 502(d) states that "the court shall disallow any claim of an entity . . . that is a transferee of a transfer avoidable under section 547." Section 547 states that "the trustee may avoid any transfer . . . made on or within 90 days before the date of the filing of the petition." 11 U.S.C. § 547(b)(4)(A).[6] Thus, a Court is to bar the claim of any transferee of a transfer made on or within 90 days before the filing of the bankruptcy petition. The transfer in this case clearly meets the requirements of an avoidable transfer under Section 547; it must thus be disallowed by the Court pursuant to 502(d).

No reference is made in 502(d) to Section 546(a)(1), which addresses not the requirements of avoidable transfers, but only the time limitations on avoidance actions. Neither the Bankruptcy Code nor the Bankruptcy Rules specifies any limitations period within which a trustee must object to claims. *See* 11 U.S.C. § 502(a); Fed.R.Bankr.P. 3007. *See also In re Kolstad*, 928 F.2d 171, 174 (5th Cir.), *cert. denied*, 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991); *In re Stoecker*, 143 B.R. at 131. Thus, while it is clear that the USL Trust is barred from bringing an avoidance action against MARAD, it is equally clear that nothing in the statutory language limits the scope of USL Trust's objection to claims to those for which it has timely filed an avoidance action.

Finally, a preference is avoidable if it meets all the criteria set forth in Section 547. *See In re Stoecker*, 143 B.R. at 132. The ability of the trustee to bring a timely avoidance action under Section 546(a) is not one of those criteria. As Judge Abram noted in *Mid Atlantic*:

> The argument that the use of the word "avoidable" in Code § 502(d) is intended to incorporate the statute of limitations fixed by Code § 546 seems to be grasping at straws when it is considered how much more directly and plainly the idea could have been expressed by using the word "timely" in front of avoidance or adding a reference to Code § 546.

*Mid Atlantic*, 60 B.R. at 610 n. 11. *See also Stoecker*, 143 B.R. at 132 ("If such a limitations period on claim objections under section 502(d) was intended by Congress, it easily

---

11 U.S.C. § 547(b)(4)(A).

**6.** In addition to the 90 day requirement, Section 547 requires that the transfer be: 1) to or for the benefit of a creditor; 2) for or on account of an antecedent debt owed by the debtor before such transfer was made; and 3) made while the debtor was insolvent. There is no dispute that these criteria are met by the transfer at issue here.

could have included a reference to section 502(d) in section 546(a)"). Congress having spoken by its silence, this Court is not empowered to rewrite the statute. *See, e.g., Louisiana Pub. Serv. Comm'n v. F.C.C.,* 476 U.S. 355, 376, 106 S.Ct. 1890, 1902, 90 L.Ed.2d 369 (1986).

Although the plain meaning of the statute is dispositive, the legislative history of Section 502(d) and pre-Code practice also support the disallowance of MARAD's claim. Sections 502(d) and 546(a)(1) of the Bankruptcy Code are based on Sections 57g and 11e of the former Bankruptcy Act, respectively. H.R.Rep. No. 595, 95th Cong., 1st Sess. 354 (1977); S.Rep. No. 989, 95th Cong., 2d Sess. 64 (1978), *reprinted in* 1978 U.S.C.C.A.N., 5787, 5851, 5963, and 6310. *See, e.g., In re KF Dairies, Inc.,* 143 B.R. at 736; *In re Mid Atlantic Fund,* 60 B.R. at 609–10. In the leading case under the prior law, the First Circuit held that the two-year statute of limitations contained in Section 11e [7] did not apply to a trustee's objection to a claim under Section 57g. *See In re Cushman Bakery,* 526 F.2d 23, 34–37 (1st Cir. 1975), *cert. denied sub nom., Agger v. Seaboard Allied Milling Corp.,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976). The First Circuit carefully analyzed the scheme and purposes of the Bankruptcy Act as a whole, the nature and objectives of the claims process, and the objectives of statutes of limitations generally. *Id.* at 35–36. This searching inquiry led the First Circuit to conclude that "there are no affirmative reasons for holding that § 11e applies to objections to the allowance of a claim." *Id.* at 36. The Seventh Circuit followed suit in *In re Meredosia Harbor & Fleeting Serv., Inc.,* 545 F.2d 583 (7th Cir.1976), *cert. denied,* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977), holding that Section 11e was inapplicable when the trustee "defends money in his hands from

creditors" who received preferential transfers, even though the trustee would be time barred from bringing a preference action against such creditors. *Id.* at 590 (internal quotation marks omitted). This Court's own research has yielded no pre-Code authority contrary to these cases, and MARAD has cited none in its brief. Thus, were I to find Section 502(d) ambiguous, both the legislative history and pre-Code practice would nevertheless support the interpretation of Section 502(d) compelled by its plain meaning.[8]

The dispositive statutory language is, moreover, perfectly consonant with one of the chief policy concerns of the Code—namely, equitable distribution of the estate among creditors. *See Begier v. I.R.S.,* 496 U.S. 53, 58, 110 S.Ct. 2258, 2262, 110 L.Ed.2d 46 (1990) (discussing Section 547(b)'s scheme of avoidable transfers). As the Ninth Circuit Bankruptcy Appellate Panel in *In re KF Dairies, Inc.* observed, the Code:

> does not sanction a choice between the equal distribution an [avoidable preference] action would provide and the less unequal distribution an objection would provide. When both are available to remedy an avoidable transfer, an action yielding affirmative relief should be pursued. If an action is time barred, an objection yielding partial relief should be pursued. In this manner, the Code achieves the most equal distribution available....

*In re KF Dairies, Inc.,* 143 B.R. at 737.

## CONCLUSION

For the foregoing reasons, the Bankruptcy Court's decision is affirmed.

SO ORDERED.

---

7. The statute of limitations contained in Section 11e provided that the Trustee
   may, within two years subsequent to the date of adjudication or within such further period of time as the Federal or State law may permit, institute proceedings...."
   11 U.S.C. § 29(e) (1976 ed.).

8. It is well-established that when Congress amends the bankruptcy laws, "it does not write 'on a clean slate.'" *Dewsnup v. Timm,* 502 U.S. 410, 419, 112 S.Ct. 773, 779, 116 L.Ed.2d 903

(1992). The Supreme Court has viewed with considerable skepticism "arguments that would interpret the Code, however vague the particular language under consideration might be, to effect a major change in pre-Code practice that is not the subject of at least some discussion in the legislative history." *Id.* This Court is not aware of, and MARAD has not pointed out, any such discussion in the legislative history concerning Section 502(d).