**In the Matter of EYE CONTACT, INC., Debtor.**

**Bankruptcy No. MM7–86–02842.**

United States Bankruptcy Court, W.D. Wisconsin.

March 3, 1989.

Michael Kepler, Madison, Wis., trustee.

Richard Jacobson, Borns, Macaulay & Jacobson, Madison, Wis., for debtor.

## MEMORANDUM DECISION

ROBERT D. MARTIN, Chief Judge.

Claimant, Bernadette Stoudt, was employed by Eye Contact after May 27, 1986, under a contract for an annual salary of $18,000.00 and a bonus of $2,500.00 upon the completion of each three months' work. On August 27, 1986, she became entitled to a bonus of $2,500.00 but Eye Contact was unable to pay it. On September 6, 1986, Eye Contact and Ms. Stoudt agreed to a new contract for an annual salary of $28,000.00 without any bonuses. On October 3, 1986, Eye Contact paid Ms. Stoudt $1,000.00 to be applied to the unpaid portion of her $2,500.00 bonus. On November 14, 1986, Eye Contact filed a chapter 11 petition. Twelve days later, Ms. Stoudt terminated her employment with Eye Contact. At that time all her wages except the unpaid bonus had been paid.

On June 18, 1987, Ms. Stoudt filed a claim for the unpaid bonus in the amount of $1,746.60 [1] due for work performed from May 27 to September 6, 1986. She claims $1,000.00 is entitled to third priority status under Bankruptcy Code § 507(a)(3). The trustee appointed in the Chapter 7 case to which this case was converted on March 23, 1987, objects to the claim and any priority.

Section 507(a)(3) provides:

(a) The following expenses and claims have priority in the following order:

. . . .

(3) Third, allowed unsecured claims for wages, salaries, or commissions, including vacation, severance, and sick leave pay—

(A) *earned by an individual within 90 days before the date of the filing* of the petition or the date of the cessation of the debtor's business, whichever occurs first; but only

(B) to the extent of $2,000 for each such individual.

(emphasis supplied). Since section 507(a)(3) limits wage priority claims to $2,000.00 and she has already received $1,000.00, Ms. Stoudt concludes that only $1,000.00 of the $1,746.60 still owed her is entitled to priority.

■ The trustee contends that section 507(a)(3) only grants priority to the extent work is actually performed during the ninety days prior to bankruptcy. The ninety-day priority period began on August 16, 1986, and Ms. Stoudt worked twenty-one days thereafter under the wage bonus system. The trustee calculates these twenty-one days of work within the priority period entitle Ms. Stoudt to $576.92 as a wage priority claim.[2] However, the trustee further contends that the $1,000.00 bonus payment made on October 3, 1986, was a voidable preference and that because the amount of the preference has not been tendered to the estate the entire claim must be disallowed under section 502(d).

Section 502(d) provides:

Notwithstanding subsections (a) and (b) of this section, the court shall disallow

---

1. Apparently Ms. Stoudt arrived at the $1,746.60 figure by adding the $27.40 per day ($2,500.00 divided by 91.25 days or ¼ of a year) she earned for the nine days from end of the first three-month bonus period (August 27) until the termination of the bonus system (September 6) to the unpaid $1,500.00 from the first quarter of her employment.

2. How the trustee arrived at this figure is unclear. If Ms. Stoudt accrued $27.40 in bonus wages for each day of her employment, Ms. Stoudt should have accrued $575.40 in bonus wages for the twenty-one days of her employment under the bonus system within the ninety-day priority period (August 16—September 6).

any claim of any entity ... that is a transferee of a transfer avoidable under section ... 547 ... unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section ... 550 ... of this title.

The trustee need not commence an avoidance action to bring section 502(d) into play. *In re Larsen*, 80 B.R. 784, 791 (Bankr.E.D.Va.1987); *In re Mid Atlantic Fund, Inc.*, 60 B.R. 604, 610 (Bankr.S.D.N.Y.1986). By making a *prima facie* showing that the transfer is voidable, he can assert the alleged preference defensively under section 502(d) to defeat a proof of claim. *See Mid Atlantic Fund*, 60 B.R. at 609.

Under the facts of this case, there is no doubt that a "transfer of an interest of the debtor in property" occurred, 11 U.S.C. § 547(b), that Ms. Stoudt was a creditor at the time she received the money, *id.* section 547(b)(1), and that the payment was on account of an antecedent debt, *id.* section 547(b)(2). Because Eye Contact is presumed to have been insolvent during the ninety days prior to bankruptcy, *id.* section 547(f), the only element of the trustee's *prima facie* case not clearly evident is whether the payment enabled Ms. Stoudt to receive more than she would under a distribution from the chapter 7 estate if the transfer had not been made. *Id.* sections 547(b)(4), (5). If the transfer had not been made, Ms. Stoudt would hold a claim for $2,746.60, $575.40 of which would be entitled to priority. *See infra* at 992. Assuming that the portion of Ms. Stoudt's claim entitled to priority would be paid in full, she would have to receive a distribution of less than $424.60 on account of her general unsecured claim of $2,171.20 in order for section 547(b)(5) to be satisfied. The full record in this case indicates the probability that general creditors will receive a distribution, if any, of considerably less than

19.6%. This, and the trustee's conclusory assertion that the payment was "not in the ordinary course and to me represents a preference," will suffice as to the final element of § 547(b).

█ Under section 502(d), therefore, Ms. Stoudt's entire claim must be disallowed. As the legislative history states:

Subsection (d).... requires disallowance of a claim of a transferee of a voidable transfer in toto if the transferee had not paid the amount or turned over the property received as required under the sections under which the transferee's liability arises.

H.Rep. No. 95–595, 95th Cong., 1st Sess. 354 (1977); U.S.Code Cong. & Admin.News 1978, pp. 5787, 6310. Should Ms. Stoudt surrender the $1,000.00 to the estate, she could assert an allowable claim against the estate. *Verco Industries v. Spartan Plastics (In re Verco Industries)*, 704 F.2d 1134, 1138 (9th Cir.1983) (court states that refusing to allow transferee to assert a claim against the estate after disgorging the fraudulent transfer would result in an "'inequitable' double recovery"). Should Ms. Stoudt elect, however, to retain the $1,000.00 and hope the trustee does not seek its recovery [3], she will forgo her opportunity to participate in the distribution from the estate based on her claim. *See Tidwell v. Atlanta Gas Light Co. (In re Georgia Steel, Inc.)*, 38 B.R. 829, 839 (Bankr.M.D.Ga.1984) ("Section 502 was not designed to punish, but to give creditors an option to keep their transfers (and hope for no action by the trustee) or to surrender their transfers and their advantages and share equally with other creditors."). Should the status quo prevail, Ms. Stoudt appears better off than if she had not received the October 3rd payment (or, if she had turned it over to the estate) and received a distribution from Eye Contact's

**3.** At this juncture it appears that the trustee has little incentive to commence an adversary proceeding to recover the $1,000.00. Moreover, the trustee will soon be time barred from bringing such an action. Under section 546(a)(1), "an action ... under section ... 547 ... may not be commenced after ... two years after the ap-

pointment of a trustee under section 702...." Following the conversion of this bankruptcy case from chapter 11, the trustee was appointed on March 24, 1987. Since no trustee was appointed in the superseded chapter 11, the statute of limitations commenced on March 24, 1987, and thus will expire shortly.

estate. This observation is based upon the court's determination that Ms. Stoudt's allowable wage priority claim would be limited to $575.40.

The court of appeals decision in *In re Northwest Engineering Co. v. United Steel Workers of America*, 863 F.2d 1313 No. 88–1489 (7th Cir.1988) is dispositive of the wage priority issue raised in this case. In *Northwest Engineering*, Judge Easterbrook confronted the conundrum posed by a case such as ours, where the employment agreement provides that work performed over a certain period of time gives rise to a benefit which only vests at the end of the specified time period. *Id.*, at 1315.

Judge Easterbrook held that to the extent the employer is contractually indebted to the employee, "vacation pay is 'earned' continuously" as work is done. *Id.* at 1316. Under this approach, the court first inquires whether the employee's rights to an employment benefit have vested either prior to, or during, the priority period; if so, a "debt" exists. All work performed during the priority period which would entitle the employee to a future benefit constitutes the "earning" of that benefit to the extent the employer was already indebted to the employee. *Id.*

In our case, Ms. Stoudt's rights to $2,500.00 in bonus wages vested on August 27, 1986, eleven days into the priority period. Presumably her rights to an additional $246.60 in bonus wages vested on September 6, 1986, when the wage bonus system was discontinued. In any event, Eye Contact owed Ms. Stoudt at least $1,500.00 in bonus wages at the time the bankruptcy petition was filed. The amount of the debt owed to Ms. Stoudt that is to receive third-priority status is measured by how much bonus pay was "earned" in the ninety days prior to the bankruptcy. Calculating from the date of filing on November 14, 1986, the ninety-day priority period began on August 16, 1986. Twenty-one days elapsed from that date until September 6, 1986,

when Ms. Stoudt was converted into a full-salaried employee and the bonus system was terminated. Therefore, Ms. Stoudt "earned" twenty-one days of bonus wages during the priority period leaving her with an allowable wage priority claim of $575.40. The remaining $1,171.20 would be allowable as a general unsecured claim.[4]

In conclusion, the trustee's objection to the allowance of Ms. Stoudt's entire claim is sustained. As noted above, this result is more favorable to Ms. Stoudt than it may appear. She loses the right to share in distribution from the estate on account of her claim. However, even assuming the portion of her claim entitled to priority would be paid in full from the estate, it is improbable that any distribution on account of the remainder of her claim would result in Ms. Stoudt receiving more than amount of the preferential transfer she has retained.

Upon these findings and conclusions an order for judgment may be entered sustaining the trustee's objection.

---

**4.** Wage priority claim of $575.40: (21 days × $27.40/day).

General unsecured claim of $1,171.20: ($2,500.00 [wage bonus March 27 to Aug. 27] + 246.60 [wage bonus Aug. 28 to Sept. 6]—$1,000.00 [Oct. 3 payment]—575.40 [wage priority claim]).