In re McLEAN INDUSTRIES,
INC., et al., Debtors.

UNITED STATES LINES, INC. and United States Lines (S.A.), Inc. Reorganization Trust, as Successor–In–Interest to United States Lines (S.A.), Inc., Plaintiffs,

v.

UNITED STATES of America and Chemical Bank, In Its Capacity as Depository, Defendants.

Bankruptcy No. 86–B–12238 to 86–B–12241(CB).
Adv. No. 89–6125A.

United States Bankruptcy Court, S.D. New York.

June 9, 1995.

As Corrected June 20, 1995.

Paul, Weiss, Rifkind, Wharton & Garrison by Robert Drain, New York City, for plaintiff U.S. Lines Reorganization Trust.

Frank W. Hunger, Asst. Atty. Gen., Dept. of Justice, by John T. Stemplewicz, Atty., Civil Div., Washington, DC, for U.S.

## MEMORANDUM DECISION ON REMAND OF PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT UNDER SECTION 502(d) OF THE BANKRUPTCY CODE

CORNELIUS BLACKSHEAR,
Bankruptcy Judge.

United States Lines, Inc. and United States Lines (S.A.) Inc. Reorganization Trust (the "Trust"), as successor-in-interest to United States Lines (S.A.), Inc. (the "Debtor"), former debtor and debtor in possession, objects pursuant to § 502(d) and § 506(d) of Title 11, United States Code (the "Bankruptcy Code"), and Rule 3007 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") to the secured claim of the United States asserted on behalf of the Maritime Administration ("MARAD") until such time as MARAD relinquishes its claim to property of the Debtor's estate that is the subject of a preferential transfer. In an earlier decision, which was upheld by the United States District Court for the Southern District of New York, this Court found that MARAD received a preferential assignment of vessel charters and charter hire made in connection with MARAD's valid and duly perfected security interest in certain vessels. *United States Lines (S.A.), Inc. v. United States (in re McLean Indus.),* 132 B.R. 247 (Bankr.S.D.N.Y.1991), *aff'd,* 162 B.R. 410 (S.D.N.Y.1993).

### FACTS

The facts are set forth in detail in this Court's earlier decision, *In re McLean Indus., Inc.,* 132 B.R. 247, and familiarity with that decision is presumed.

MARAD's proofs of claim relate to its guaranty under Title XI of the Merchant Marine Act, 1936, as amended, 46 U.S.C. §§ 1271 *et seq.* (the "Title XI Guarantee"), of two series of bonds aggregating $45,826,000 in principal amount, which were issued by the Debtor's predecessor-in-interest, Moore–McCormick Lines, Inc. ("Moore"). Moore's obligations to MARAD in connection with the Title XI Guarantee were secured by first and second priority preferred mortgages (the "MARAD Mortgages") on three of the Debtor's vessels (the "Vessels").

As part of its restructuring, the Debtor entered into an agreement on September 24, 1986 with Lykes Brothers Steamship Company ("Lykes") providing for a three-year bareboat charter to Lykes of the Vessels. The MARAD Mortgages prohibited the Debtor

from bareboat chartering the Vessels without obtaining MARAD's consent. MARAD agreed to waive that covenant on the condition that the Debtor grant MARAD a security interest in the Vessel charters and the charter hire. On November 4, 1986, the Debtor and Lykes entered into three bareboat charters (the "Lykes Charters"). Additionally, the Debtor, Lykes and MARAD entered into a Charter Assignment and Agreement (the "Assignment Agreement") pursuant to which the Debtor granted MARAD a first priority interest in the Lykes Charters and charter hire payments to the Debtor as additional collateral for the approximately $20.5 million of aggregate obligations then secured by the MARAD Mortgages.

Also on that date, in connection with the Assignment Agreement, MARAD and Chemical Bank entered into a Depository Agreement (the "Depository Agreement") pursuant to which Chemical Bank agreed to receive the charter hire from Lykes as agent for MARAD and to transfer it to the Debtor until such time MARAD served Chemical Bank with a demand for the charter hire under the Title XI Guarantee. In the event that MARAD notified Chemical Bank of a demand upon the Title XI Guarantee, Chemical Bank agreed not to pay the Debtor the charter hire subject to MARAD's further instructions. Finally, MARAD and Lykes entered into a fourth agreement pursuant to which Lykes acknowledged the MARAD Mortgages and MARAD's interest in the charters and the charter hire, including MARAD's right as a mortgagee to foreclose upon the Vessels and the charter hire.

On November 24, 1986 (the "Petition Date"), the Debtor, together with its affiliate, United States Lines, Inc. ("USL"), filed for protection under chapter 11 of the Bankruptcy Code. On April 17, 1987, MARAD demanded that Chemical Bank pay the charter hire in the depository account to MARAD under the Depository Agreement. Thereafter, the Debtor ceased receiving charter hire from the depository account. When Chemical Bank received MARAD's post-bankruptcy instructions to pay the charter hire to MARAD (the automatic stay of section 362(a) of the Bankruptcy Code having gone into ef-

fect), Chemical Bank refused to pay MARAD without a Bankruptcy Court order. No order was ever entered, and as of December 5, 1994, Chemical Bank had $11,777,269.37 on deposit in respect of the charter hire.

MARAD filed claim no. 11222 (the "MARAD Claim") against the Debtor on December 31, 1987, asserting that the Debtor owed MARAD $20,891,618.55 on a secured basis pursuant to the Title XI Guarantee and the MARAD Mortgages. In the MARAD Claim, MARAD sought to apply or setoff the amount then held ($2,353,933.10) by Chemical Bank in the depository account against the Title XI Guarantee debt.

## PROCEDURAL HISTORY

This adversary proceeding was commenced by the Debtor pursuant to the Debtor's First Amended and Restated Plan of Reorganization (the "Plan"), which was confirmed on May 16, 1989. The Trust has sought, among other things, an order (1) avoiding the Assignment Agreement as a preference and (2) disallowing the MARAD Claim unless MARAD relinquishes its claim to any property received pursuant to such preferential transfer, including all amounts in the Chemical Bank depository account, for the benefit of the unsecured creditors. MARAD responded with defenses to the preference claim, the defense of sovereign immunity and various estoppel arguments. By order dated September 11, 1991, this Court granted summary judgment in favor of the Debtor, finding that the assignment of the Lykes Charters and the Assignment Agreement were avoidable preferences and denying MARAD's cross-motion for summary judgment. In the order, this Court also held that the MARAD Claim would be disallowed unless the amounts in the depository account and any such sums constituting charter hire were turned over to the Trust. Summary Judgment Order ¶ 4.

On October 11, 1991, MARAD appealed this Court's decision to the United States District Court for the Southern District of New York, the parties having agreed to a

stay pending disposition of the appeal.[1] On December 17, 1993, the District Court affirmed this Court's decision, agreeing with this Court's findings that the various defenses raised by MARAD to the preference claim were unsupported and erroneous as a matter of law. *In re McLean Indus.*, 162 B.R. 410.

On April 22, 1993, this Court entered its Order Authorizing and Approving Compromise and Settlement between the Debtor and USL, by their successor, the Trust, the United States of America and the United States Postal Service (the "Setoff Order"). Pursuant to the Setoff Order, this Court approved a Settlement Agreement dated as of December 31, 1992 (the "Setoff Settlement Agreement"), by and among the Trust, the United States of America and the United States Postal Service, under which the parties compromised disputes about (a) the allowance and treatment of claims asserted by various United States government agencies against the Trust, and (b) the disposition of another adversary proceeding in this Court (No. 88–5959A) by the Debtor and USL against the United States seeking, among other things, turnover of funds retained by the United States under alleged setoff claims.[2] Under the terms of the Setoff Settlement Agreement, the setoff adversary proceeding was dismissed and the United States' asserted setoff rights were given limited effect. However, under the Setoff Settlement Agreement, the United States' setoff rights remain expressly subject to any available defenses of the Trust relating to this adversary proceeding, including defenses to the MARAD Claim under section 502(d).

On February 24, 1994, MARAD filed its notice of appeal of the District Court's order with the Court of Appeals for the Second Circuit. After MARAD had submitted its brief, the Second Circuit rendered its decision in *United States Brass & Copper Co. v. Caplan (In re Century Brass Prods.)*, 22 F.3d 37 (2d Cir.1994), holding that the two-year statute of limitations contained in section 546(a)(1) of the Bankruptcy Code limits the ability of debtors in possession to commence avoidance claims.

On the authority of *Century Brass*, the Second Circuit reversed the decision of the District Court and ruled that commencement of the Debtor's preference avoidance claim against MARAD was time-barred. *In re McLean Indus.*, 30 F.3d at 385. The Second Circuit expressly declined to consider the other rulings of this Court and of the District Court. *Id.* at 388.

In its brief filed with the Second Circuit, the Trust argued that whether or not section 546(a)(1) and *Century Brass* barred the commencement of a preference avoidance claim, MARAD's Claim should nevertheless be disallowed under section 502(d) of the Bankruptcy Code. The Second Circuit determined that because this issue had not been fully briefed it would remand it to this Court to consider the Trust's defense under section 502(d). *In re McLean Indus.*, 30 F.3d at 388. Accordingly, a mandate was issued reversing the judgment of the District Court and remanding to this Court for further proceedings in accordance with the Second Circuit's opinion.

On October 25, 1994, the Trust submitted a Petition for Writ of Certiorari to the United States Supreme Court (the "Cert Petition") requesting the issuance of a writ of certiorari to review the Second Circuit's decision. The issue presented in the Cert Petition is whether the commencement of the preference claim against MARAD is time-barred under *Century Brass* by operation of the two-year statute of limitation contained in section 546(a)(1) of the Bankruptcy Code.[3]

### DISCUSSION

Under Rule 56(c) of the Federal Rules of Civil Procedure, made applicable in

---

1. The funds in the account continue to be subject to this stay, the stay under ¶ 9 of the Confirmation Order and section 524(a) of the Bankruptcy Code and are invested, at interest, as instructed by the Trustee of the Trust.

2. The Debtor and USL were owed substantial amounts by various government agencies under contracts of carriage and subsidy contracts, which the government had withheld against amounts owed by the Debtor and USL, primarily to MARAD.

3. The Bankruptcy Reform Action of 1994 subsequently amended section 546(a)(1), but that amendment does not apply to the Debtor's chapter 11 case H.R. 5116 § 702 (1994).

bankruptcy cases under Rule 7056 of the Federal Rules of Bankruptcy Procedure, the court may grant summary judgment when "the pleadings, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A fact is material if it will affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 245–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986). In deciding a motion for summary judgment, the court must assess whether there are any factual issues to be tried, resolve ambiguities and draw reasonable inference against the moving party. *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir.1986), *cert. denied*, 480 U.S. 932, 107 S.Ct. 1570, 94 L.Ed.2d 762. It is the moving party who bears the initial burden of showing the absence of genuine issues of material fact. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

The issue at bar is whether the Trust may now invoke section 502(d) to disallow the MARAD Claim on the grounds that MARAD received a preference, even though the Trust is precluded from filing such a preference action pursuant to section 546(a) of the Bankruptcy Code.

■ Under section 502(d) of the Bankruptcy Code, the claim of a creditor who has received an avoidable transfer must be disallowed until such transfers are relinquished for the benefit of the estate.[4] Thus, section 502(d) requires that in order to receive payment on its claim, a claimholder must play by the rules of the Bankruptcy Code and first return any preferential transfers received. The Trust argues that all that is required to invoke mandatory disallowance under section 502(d) is that an avoidable preferential transfer was received and not returned by the creditor. The Trust further argues that where a prima facie showing that the transfer is voidable has been made, the Trust can invoke section 502(d) to disallow a proof of claim. *In re Octagon Roofing*, 156 B.R. at 219–20; *In re Eye Contact, Inc.*, 97 B.R. 990, 992 (Bankr.W.D.Wis.1989); *In re Mid Atlantic Fund*, 60 B.R. at 609. Both this Court and the District Court have ruled that the assignment of the Lykes Charters and charter hire to MARAD constituted a preferential transfer of the Debtor's property. None of that property has been turned over to the Trust; instead, it remains in the depository account with Chemical Bank. Thus, the Trust argues that the MARAD Claim must be disallowed under section 502(d) until such time as the money in the depository account with Chemical Bank has been turned over to the Trust.

On the other hand, MARAD argues that the Trust cannot invoke section 502(d) of the Bankruptcy Code where, as here, the preference action itself is time-barred. In other words, because the statute of limitations period has expired, MARAD argues that the assignment of the Lykes Charters and the charter hire is not "avoidable" within the meaning of § 502(d). Under MARAD's interpretation, the term "avoidable preference" in section 502(d) means that the Trustee must not only be able to meet all of the elements for a preference set forth in section 547 of the Bankruptcy Code but also must be able to commence a timely preference action pursuant to section 546(a) of the Bankruptcy Code.

■ Few courts have addressed this same issue. Of those that have, however, the majority have concluded that a claim of a creditor who has received a preferential transfer must be disallowed until those preferential transfers are surrendered, regardless of the expiration of the statute of limitations on the underlying preference action. *In re KF Dairies*, 143 B.R. 734, 736 (9th Cir. BAP 1992); *In re Stoecker*, 143 B.R. 118 (Bankr. N.D.Ill.1992); *In re Chase & Sanborn Corp.*,

---

**4.** Section 502(d) provides in pertinent part as follows:

Notwithstanding subsections (a) and (b) of this section, the Court shall disallow any claim of any entity from which property is recoverable under section 542, 543, 550 or 553, of this title or that is a transferee of a transfer avoidable ..., unless such entity or transferee has paid the amount, or turned over any such property for which such entity or transferee is liable under section 522(i), 542, 543, 550 or 553 of this title.

124 B.R. 368, 370 (Bankr.S.D.Fla.1991); *In re Minichello,* 120 B.R. 17 (Bankr.M.D.Pa. 1990); *In re Eye Contact, Inc.,* 97 B.R. 990 (Bankr.W.D.Wash.1989); *In re Larsen,* 80 B.R. 784 (Bankr.E.D.Va.1987); *In re Tesmetges,* 87 B.R. 263 (Bankr.E.D.N.Y.1988), *aff'd,* 95 B.R. 19 (E.D.N.Y.1988); *In re Mid Atlantic Fund. Inc.,* 60 B.R. 604 (Bankr. S.D.N.Y.1986).

MARAD argues that this Court should reject the majority view espoused in *In re Mid Atlantic Fund, Inc.,* and instead follow the minority view adopted by the bankruptcy courts in *In re Marketing Associates of America, Inc.,* 122 B.R. 367 (Bankr.E.D.Mo. 1991) and in *In re Marketing Resources Internat'l Corp.,* 35 B.R. 353 (Bankr.E.D.Pa. 1984). This Court declines to follow the minority view which has been strongly criticized by other courts. *See e.g., In re Stoecker,* 143 B.R. at 118, 136–37; *In re KF Dairies,* 143 B.R. at 736. Instead, in accordance with the better reasoned holding of the court in *Mid Atlantic Fund, Inc.,* this Court finds that the Trust may object to the MARAD Claim pursuant to section 502(d) regardless of the expiration of the statute of limitation under section 546(a)(1).

■■■ As the Supreme Court has stated, the logical starting point when interpreting a statute is the statute's language. *Pennsylvania Dep't of Publ. Welfare v. Davenport,* 495 U.S. 552, 557–58, 110 S.Ct. 2126, 2130–31, 109 L.Ed.2d 588 (1990). If a statute is clear on its face, its plain meaning should control. *United States v. Ron Pair Enters., Inc.,* 489 U.S. 235, 242, 109 S.Ct. 1026, 1030–31, 103 L.Ed.2d 290 (1989). A departure from a statute's literal meaning is appropriate only if literal application is "demonstratively at odds with" the drafters' intentions. *Id.* Thus, where no ambiguity exists, the courts are bound to apply the statute as written. *Id.* at 241, 109 S.Ct. at 1030.

A plain reading of section 502(d) is revealing. Section 502(d) states that a court shall disallow any claim which is held by the transferee of "a transfer avoidable under ... section 547...." A transfer is an avoidable preference if the transfer satisfies all of the elements set forth in section 547. Indeed, section 502(d) refers to section 547, not sec-

tion 546(a)(1). Further, section 547(b) states that "the trustee may [not must] avoid a transfer of an interest of the debtor in property", provided that it meets the criteria set forth in subsections (b)(1)–(5), which do not refer to section 546(a)(1). 11 U.S.C. § 547(b). As the court in *In re Stoecker* noted:

> [Section 546] ... has nothing to do with the essential elements necessary to establish an avoidable preferential transfer. Rather, it limits the time after a trustee is appointed during which a trustee must file an adversary proceeding to avoid a transfer. The time within which such suit must be filed, however, in no way establishes any essential element of such transfer as preferential under section 547(b)(1)–(5). Therefore, a literal reading of section 502(d) would permit a trustee to object to payment of a dividend on a claim held by a creditor retaining a preference, so long as that preference meets all of the elements of section 547, whether or not the time limit prescribed in section 546(a) has expired.

*In re Stoecker,* 143 B.R. at 132.

■■■ Moreover, section 502(d) makes no reference to any time limitations. Also, neither Bankruptcy Code sections 502(d) nor 546(a) and Bankruptcy Rule 3007, fix any time limitations for disallowing secured claims under section 502(d). *See, United States v. Kolstad (In re Kolstad),* 928 F.2d 171, 174 (5th Cir.), *cert. denied,* 502 U.S. 958, 112 S.Ct. 419, 116 L.Ed.2d 439 (1991); *In re Mid Atlantic Fund,* 60 B.R. at 610. Had Congress intended to impose a time limitation on objections to claims under section 502(d), they could have done so very easily. Congress' failure to do so precludes this Court from rewriting the statute. As my colleague, Judge Abram, so aptly said in *In re Mid Atlantic Fund, Inc.:*

> The argument that the use of the word 'avoidable' in Code § 502(d) is intended to incorporate the statute of limitations fixed by Code § 546 seems to be grasping at straws when it is considered how much more directly and plainly the idea could have been expressed by using the word 'timely' in front of avoidance or adding a reference to Code § 546.

*In re Mid Atlantic Fund, Inc.,* 60 B.R. at 610 n. 11.

In *Mid Atlantic Fund, Inc.,* several creditors unsuccessfully sought to collect upon a money judgment they obtained against debtor. The creditors then entered into an agreement with the debtor whereby the debtor paid on the judgment both in cash and in the form of an assignment of a mortgage secured by real property as collateral for the payment of the remaining balance. The creditors failed to record the assignment. Shortly thereafter, an involuntary petition was filed against the debtor. As a result of the expiration of the statute of limitations under section 546(a), the appointed trustee was time-barred from either commencing an adversary proceeding to recover the cash payment or from avoiding the assignment of the mortgage. However, the bankruptcy court held that the statute of limitations did not preclude the trustee from relying defensively on section 502(d). In so holding, the court noted that outside of bankruptcy, "as a general rule, limitation statutes are not applicable to defenses but apply only where affirmative relief is sought." *Id.* at 610. The court held that in order to succeed on an objection to a claim under section 502(d), the movant need only make a *prima facie* showing the transfer was preferential.

Even assuming, *arguendo,* that the language of section 502(d) is unclear, the law which developed under its predecessor section 57(g) of the prior Bankruptcy Act, is very helpful. Under the former Bankruptcy Act, a trustee could raise an otherwise time-barred avoidable transfer so as to cause disallowance of a claim under 57(g). *In re Meredosia Harbor & Fleeting Service, Inc.,* 545 F.2d 583 (7th Cir.1976), *cert. denied* 430 U.S. 967, 97 S.Ct. 1649, 52 L.Ed.2d 359 (1977); *In re Cushman Bakery,* 526 F.2d 23 (1st Cir.1975), *cert. denied,* 425 U.S. 937, 96 S.Ct. 1670, 48 L.Ed.2d 178 (1976); *In re Supreme Synthetic Dyers, Inc.,* 3 B.R. 189 (Bankr.E.D.N.Y.1980); *In re Hudson Feather & Down Products, Inc.,* 22 B.R. 247 (Bankr.E.D.N.Y.1982). The legislative history of Code section 502(d) states that it was derived from existing law. H.R. No. 95–595 at 354; S.R. 95–989 at 64, 1978 U.S.C.C.A.N. at p. 5787. Thus, this Court may look to the law developed under 57(g) of the former Bankruptcy Act in its application and interpretation of section 502(d).

■ Accordingly, this Court holds that the Trust may object to the MARAD Claim pursuant to section 502(d) on the grounds that MARAD has not turned over to the Trust the funds in the depository account with Chemical Bank. This Court also finds that the Trust has satisfied the requirements under section 502(d) based on this Court's prior determination that the assignment of the Lykes Charters and the charter hire indeed constituted an avoidable preference. Under section 506(d), a secured creditor's lien is voided to the extent such creditor's secured claim is not allowed. Because the MARAD Claim is not an allowable claim under section 502(d) of the Bankruptcy Code, the liens securing the MARAD Claim are void under section 506(d) of the Bankruptcy Code.

### *CONCLUSION*

For the foregoing reasons, this Court grants summary judgment in favor of the Trust on the Trust's motion to disallow the MARAD Claim pursuant to section 502(d) of the Bankruptcy Code.

The Trust is directed to settle an order on five (5) days' notice to MARAD and all other parties in interest, in accordance with this decision.