**In re COMMERCIAL FINANCIAL SERVICES, INC., and CF/SPC NGU, Inc., Debtors.**

**Bradley D. Sharp, Trustee of the CFS Liquidating Trust, on Behalf of Commercial Financial Services, Inc., and CF/SPC NGU, Inc., Plaintiffs,**

**v.**

**Chase Manhattan Bank USA, N.A.; and Chase Securities, Inc., n/k/a J.P. Morgan Securities Inc., Defendants.**

**Bankruptcy Nos. 98–05162–R, 98–05166–R.**

**Adversary No. 03–0008–R.**

United States Bankruptcy Court, N.D. Oklahoma.

Aug. 18, 2003.

---

Larry W. Wolfson, Robert Fishman, Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC, Chicago, IL, Neal Tomlins, Tomlins & Goins, Tulsa, OK, for Plaintiffs.

Thomas C. Rice, Joseph F. Wayland, Simpson, Thacher & Bartlett, LLP, New York City, Frederic Dorwart, Michael Medina, Frederic Dorwart Lawyers, Tulsa, OK, for Defendants.

*ORDER DENYING DEFENDANTS' MOTION TO DISMISS AND GRANTING PLAINTIFFS LEAVE TO AMEND COMPLAINT*

DANA L. RASURE, Bankruptcy Judge.

## I. Procedural history

On January 15, 2003, Plaintiffs Bradley D. Sharp, Trustee of the CFS Liquidating Trust, acting on behalf of Commercial Financial Services, Inc. ("CFS"), and CF/SPC NGU, Inc. ("NGU") (sometimes collectively referred to as the "Plaintiffs"),[1] filed their Complaint against Defendants Chase Manhattan Bank USA, N.A. ("Chase Bank") and Chase Securities, Inc., now known as J.P. Morgan Securities, Inc. ("Chase Securities") (collectively, the "Chase Entities"), seeking to avoid and recover various fees and commissions that CFS and/or NGU paid to Chase Bank and Chase Securities for the purchase of allegedly overpriced portfolios of charged-off credit card accounts (the "Accounts") and to avoid and recover a transfer CFS made to Chase Securities as a "Placement Fee" for which CFS alleges Chase Securities provided no services or other reasonably equivalent value. Recovery of these transfers is sought pursuant to Sections 544(b), 548(a) and 550(a)(1) of the Bankruptcy Code and Sections 116, 117(A), 119 and 120 of title 24 of the Oklahoma Statutes.[2] The Plaintiffs also seek a declaration that any claims Chase Bank and Chase Securities

1. In the Second Amended Plan of Orderly Liquidation (the "Plan") (Doc. 3304) that was confirmed in September 2001 in the main bankruptcy case, CFS retained (rather than distributed) all causes of action it possessed against third parties, and the CFS Liquidating Trust was authorized to pursue such actions on behalf of CFS. Plan at 20, ¶ 5.4(a). Also pursuant to the Plan, Bradley D. Sharp was appointed trustee of the CFS Liquidating Trust. Order Confirming Second Amended Plan of Orderly Liquidation ("Order Confirming Plan") (Doc. 3306) at 10, ¶ 29; Plan at 19, ¶ 5.3.

2. Eight of the nine counts of the Complaint seek the avoidance and recovery of alleged fraudulent transfers. Counts I through III relate to transfers made by NGU and Counts IV through VIII relate to transfers made by CFS.

may have against them be disallowed pursuant to Section 502(d) of the Bankruptcy Code ("Section 502(d)") unless and until the full amount of the alleged fraudulent transfers are turned over by the Chase Entities to the CFS Liquidating Trust or NGU's estate, as appropriate.

On March 20, 2003, the Chase Entities filed Chase Manhattan Bank USA, N.A.'s and J.P. Morgan Securities, Inc.'s Memorandum of Law in Support of Motion to Dismiss (Adv.Doc.10) (the "Motion to Dismiss").[3] CFS and NGU filed Plaintiff's [sic] Response in Opposition to Defendants' Motions to Dismiss (Adv.Doc.18) ("Plaintiffs' Response") on May 9, 2003. On June 13, 2003, Chase Manhattan Bank USA, N.A.'s and J.P. Morgan Securities Inc.'s Reply Memorandum of Law in Further Support of Their Motion to Dismiss (Adv.Doc. 22) was filed.

## II. Contentions of the parties

The Chase Entities contend that the Complaint should be dismissed because (1) the Plaintiffs fail to plead fraud with particularity as required by Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") and (2) without a prior adjudication that the Plaintiffs are entitled to recover from the Chase Entities on their fraudulent transfer claims, the Plaintiffs cannot assert a claim for disallowance of the Chase Entities' claims against the estate under Section 502(d).

In order to meet the requirements of Rule 9(b) in connection with the fraudulent transfer claims, the Chase Entities claim that the Plaintiffs must allege facts (not beliefs, conclusions or phraseology from statutes) from which a fact finder could conclude that the Plaintiffs were insolvent at the time of the transfers, would become insolvent as a result of the transfers, had unreasonably small capital, or intended or believed that they would incur debts beyond their ability to repay. Motion to Dismiss at 5. The Plaintiffs argue that the heightened standard for pleading fraud does not apply when the fraudulent transfer claim is not premised upon fraudulent intent, or *scienter,* but rather upon the economic circumstances existing at the time of the transfer. Plaintiffs' Response at 3. CFS and NGU also contend that even if Rule 9(b)'s stricter pleading requirements apply, their Complaint sufficiently gives notice of the "circumstances" of the claim—that is, the particulars of the transfers themselves, and that intricate details of how they intend to prove insolvency are not essential to a well-pleaded fraudulent transfer claim.

The Chase Entities also contend that "[i]n order to bring a claim under § 502(d), [the Plaintiffs] must first obtain a judicial determination of [their] fraudulent transfer claim[s]" and since no determination or judgment has yet been entered against the Chase Entities, the Plaintiffs have not alleged all the elements necessary to state a claim for disallowance of the Chase Entities' claims against the Plaintiffs. Motion to Dismiss at 7–8. The Plaintiffs dispute that statement as a matter of law, contending that although they will have to succeed in obtaining a judgment on at least one of their fraudulent transfer claims against the Chase Entities before the Plaintiffs will be entitled to a determination disallowing claims of the Chase Entities against the Plaintiffs, obtaining a judgment is not a prerequisite to the mere *assertion* of a Section 502(d) claim. Plaintiffs' Response at 7–8.

---

3. Although the Chase Entities did not file a separate motion to dismiss, the Memorandum concludes with a request for dismissal and thus the Court will deem the Memorandum a motion to dismiss.

The Plaintiffs also assert that to the extent that the Court finds the Complaint or any part thereof deficient, the Court should grant them leave to amend the Complaint. Plaintiffs' Response at 2, note 2.

## III. Jurisdiction

The Court has jurisdiction of this "core" proceeding by virtue of 28 U.S.C. §§ 1334, 157(a), and 157(b)(2)(B) and (H), and Miscellaneous Order No. 128 of the United States District Court for the Northern District of Oklahoma: Order of Referral of Bankruptcy Cases effective July 10, 1984, as amended. In addition, in its Order Confirming Plan, the Court retained jurisdiction to provide the following judicial relief—

2. To determine the allowance or classification of Claims or Interests and to determine any objections thereto;

\* \* \* \* \* \*

5. To determine any and all ... adversary proceedings ... that may be pending in the Court on or initiated after the Effective Date [September 14, 2001];

6. To hear and determine any objection to Claims or Interests ...;

7. To hear and determine any claims or causes of action brought or continued by the CFS Liquidating Trustee, to the maximum extent permitted under applicable law;

\* \* \* \* \* \*

15. To hear and determine all questions and disputes regarding title to, and any action to recover any of, the assets or property of CFS [and/or] the CFS Liquidating Trust ... wherever located; [and]

\* \* \* \* \* \*

19. To hear any other matter not inconsistent with the Bankruptcy Code[.]

Order Confirming Plan, ¶ P, at 18–20.

## IV. Standard for evaluating motion to dismiss

In evaluating a motion to dismiss for failure to state a cognizable claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (made applicable to this adversary proceeding by Bankruptcy Rule 7012(b)), "it must appear beyond doubt that the plaintiff can prove no set of facts that would entitled him to relief." *Swanson v. Bixler*, 750 F.2d 810, 813 (10th Cir.1984). The Court must "assume as true the facts asserted in the complaint and construe the well-pleaded allegations in favor of the plaintiff." *Ballen v. Prudential Bache Securities, Inc.*, 23 F.3d 335, 336 (10th Cir.1994). "All reasonable inferences must be indulged in favor of the plaintiff, ... and the pleadings must be liberally construed." *Swanson*, 750 F.2d at 813.

In cases in which it is applicable, Rule 9(b) must be satisfied to survive a motion to dismiss under Rule 12(b)(6).[4]

## V. The Complaint

The relevant well-pleaded facts that the Court assumes are true for the purpose of the Motion to Dismiss are summarized as follows:

At all times relevant to the Complaint, CFS was an Oklahoma corporation that was engaged in the business of buying, servicing, collecting and packaging for securitization charged-off credit card accounts and other receivables ("Accounts"). In connection with its business operations, CFS caused the formation of various affili-

---

**4.** Bankruptcy Rule 7009 incorporates Rule 9(b) as applicable in adversary proceedings.

ates to acquire and facilitate the securitization of the Accounts. NGU was formed by CFS for the purpose of acquiring Accounts and transferring them to a securitization trust.

CFS and NGU acquired Accounts by entering into spot (one-time) or forward-flow (long-term) contracts with banks and other credit card issuers. In a forward-flow contract, the Account vendor agreed to sell to CFS or NGU, on a monthly basis and at a specified price, all of the vendor's Accounts that fell within certain parameters. Prior to their bankruptcy and liquidation, CFS and NGU entered into forward-flow contracts with many vendors, including Chase Bank.

In 1996, Chase Securities[5] entered into a letter agreement with CFS in which CFS agreed to pay commissions to Chase Securities for introducing CFS and NGU to Account vendors from whom CFS and NGU would acquire Accounts (the "Commission Agreement"). The rate of commission ranged from .25 percent to .50 percent of the book value of the Accounts acquired by CFS in any transaction covered by the Commission Agreement. The Commission Agreement also provided that Chase Securities would receive one percent of the amount CFS collected on the Accounts acquired under the Commission Agreement. In 1998, the rate of commission was reduced to .175 percent of the book value of the Accounts.

In November 1997, Chase Bank entered into an agreement with NGU (and TAPR VIII, another CFS affiliate) to sell them all Chase Bank's Accounts at the price of 11.75 percent of the total unpaid balances of the Accounts (the "11.75 Percent Contract"). Prior to November 1997, Chase Bank had charged 10.00 to 10.25 percent

for the same class of Accounts. Rates that CFS and NGU paid to thirteen other vendors for Accounts of comparable quality were all lower than 11.75 percent. In addition, other vendors did not charge commissions to CFS or NGU, nor was it customary in the marketplace for an Account vendor or its affiliate to charge a buyer a commission on Accounts purchased from that vendor. When the contract rate and commission were combined, CFS and NGU paid an effective rate of 11.925 percent of the unpaid balance of Accounts for Accounts it purchased from and through the Chase Entities.

Between January 27, 1998 and October 16, 1998, NGU purchased Accounts from Chase Bank under the 11.75 Percent Contract for a total purchase price of $55,421,388.00. On or about October 16, 1998, NGU ceased purchasing Chase Bank Accounts and CFS commenced purchasing Chase Bank Accounts pursuant to an assignment of rights under the 11.75 Percent Contract. From October 17, 1998 to December 4, 1998, CFS paid Chase Bank $18,412,163.00 for Chase Bank Accounts. Additionally, between January 1, 1997 and December 4, 1998, CFS paid commissions to Chase Securities under the Commission Agreement in the total amount of $3,895,266.00.

CFS and Chase Securities also entered into a contractual relationship in which CFS was obligated to pay Chase Securities placement fees for services rendered by Chase Securities in connection with the issuance, offering and sale of asset-backed securities—that is, securities collateralized by the Accounts (the "Placement Agreement"). Through May of 1998, CFS paid Chase Securities a placement fee upon the closing of each securitization transaction

5. The original contract was with Chemical Securities, Inc., now known as Chase Securi- ties.

pursuant to the Placement Agreement. The propriety or value of these placement fees are not challenged in this adversary proceeding.

In May 1998, CFS and Chase Securities entered into a new placement agreement in connection with services to be rendered by Chase Securities with respect to CFS-sponsored asset-backed securities offered and issued in 1998 (the "1998 Placement Agreement"). The 1998 Placement Agreement again provided that CFS would pay Chase Securities a placement fee upon the closing of any such offering. To the extent that Chase Securities was paid placement fees pursuant to the original terms of the 1998 Placement Agreement, those payments are not challenged either.

In August 1998, however, CFS and Chase Securities modified the 1998 Placement Agreement to release Chase Securities from its obligation to provide placement and advisory services to CFS and to release CFS from its obligation to employ Chase Securities to provide placement and advisory services in connection with future offerings. Notwithstanding the release and the termination of Chase Securities obligation to provide placement services, "in recognition of past services and in connection with the modifications," CFS agreed to pay Chase Securities a placement fee in "an amount equal to 0.36% of the principal amount of all Further 1998 Securities sold" upon closing of any such transaction. Exhibit I to the Complaint, ¶ 2. On September 30, 1998, CFS paid Chase Securities a placement fee of $702,252.00, even though Chase Securities provided no placement services in connection with the offering that closed on that date.

### A. *NGU's fraudulent transfer claims (Counts I–III)*

With respect to NGU's fraudulent transfer claims against the Chase Entities, NGU contends that because the rate of compensation it paid to Chase Bank significantly exceeded the market value for the Accounts, as established by the rate paid to other vendors, NGU received less than reasonably equivalent value in exchange for payments made to Chase Bank under the 11.75 Percent Contract, which payments totaled $55,421,388.00.

In connection with its request for avoidance and recovery of the payments (to the extent that equivalent value was not received by NGU for payments made to Chase Bank within the year before bankruptcy) under Sections 548(a) and 550 of the Bankruptcy Code, NGU states—

36. On information and belief, on the date of each of the NGU Transfers, NGU (a) was insolvent, or became insolvent as a result of that transfer; (b) was engaged in business or a transaction, or was about to engage in business or a transaction, for which any property remaining with NGU was an unreasonably small capital; and/or (c) intended to incur, or believed it would incur, debts that would be beyond its ability to pay as such debts matured.

Complaint at 10. In seeking the same relief under Sections 544(b) and 550 of the Bankruptcy Code and Oklahoma's fraudulent transfer statutes for transfers made during the four year period prior to bankruptcy, NGU states—

43. On information and belief, on the date of each of the NGU Transfers, NGU (a) was engaged or was about to engage in a business or a transaction for which the remaining assets of NGU were unreasonably small in relation to the business or transaction; and/or (b) intended to incur, or believed or reasonably should have believed that it would incur, debts beyond its ability to pay as they became due.

\* \* \* \* \* \*

50. On information and belief, NGU was insolvent at the time of, or became insolvent as a result of, each of the NGU Transfers.

51. On information and belief, there are creditors of NGU whose claims (a) arose before the date of each of the NGU Transfers, (b) remain unpaid, and (c) exceed, in the aggregate, the total amount of the NGU Transfers.

Complaint at 11–12. Finally, NGU claims it is entitled to avoid the transfers pursuant to Sections 544(b) and 548(a)(1) of the Bankruptcy Code and 24 O.S. §§ 116 and 117(A), and recover the transfers from Chase Bank pursuant to Section 550(a)(1) of the Bankruptcy Code and/or 24 O.S. §§ 119 and 120.

### B. *CFS's fraudulent transfer claims (Counts IV–VIII)*

CFS also claims that it received less than equivalent value for payments it made to Chase Bank and Chase Securities within the four year period preceding its bankruptcy. Like NGU, CFS alleges its insolvent condition by invoking the bare statutory language of Section 548(a) of the Bankruptcy Code and the relevant portions of the Oklahoma fraudulent transfer statutes. *See* Complaint at ¶¶ 58, 66, 74, 75, 83, 90, 97 and 98. CFS seeks avoidance under Sections 544(b) and 548(a) and 24 O.S. §§ 116 and 117(A), and recovery of (1) payments made by CFS to Chase Bank pursuant to the assignment and assumption of NGU's rights and liabilities under the 11.75 Percent Contract after October 1998, (2) payments made by CFS to Chase Securities pursuant to the Commission Agreement, and (3) the payment to Chase Securities of $702,252.00 pursuant to the modified 1998 Placement Agreement.

### C. *Plaintiffs' Section 502(d) claim (Count IX)*

Finally, in Count IX, CFS and NGU claim that "Chase Bank and Chase Securi-ties have failed to turn over to the … estates [of CFS and NGU] property that [CFS and NGU] are entitled to recover under the applicable provisions of the Bankruptcy Code" and that any claims that Chase Bank has against CFS or NGU, and any claims Chase Securities has against CFS, should be disallowed pursuant to Section 502(d) of the Bankruptcy Code unless and until the Chase Entities satisfy their obligations to CFS and/or NGU, as the case may be. Complaint at 18. Certainly, there has been no determination that CFS and/or NGU are entitled to avoid and recover the transfers sought in Counts I through VIII, and therefore Chase Bank and Chase Securities have not literally "failed to turn over" property to which CFS and NGU are "entitled" at this time. Whether CFS and NGU may press a claim to disallow the Chase Entities' claims against them in the same proceeding in which CFS and NGU seek to establish the right to recover property from the Chase Entities is the legal issue underlying the Chase Entities' request to dismiss the Section 502(d) claim.

## VI. Conclusions of law

### A. *Rule 9(b)*

 Rule 9(b) of the Federal Rules of Civil Procedure ("Rule 9(b)") provides—

> In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

*Id.* The principal purpose of Rule 9(b) is to afford a defendant fair notice of a plaintiff's fraud claim and the factual ground upon which it is based. Rule 9(b) also safeguards a defendant's reputation from irresponsible or unsupported charges of

fraudulent behavior. *See Lehman Bros. Commercial Corp. v. Minmetals Int'l Non–Ferrous Metals Trading Co.,* 1995 WL 608323, at *2 (S.D.N.Y.1995), *quoting Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994); *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982, 987 (10th Cir.1992). *See also Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.),* 32 B.R. 199, 203 (Bankr. S.D.N.Y.1983) (because fraud allegations "may have serious impact on the reputation of the defendant, ... it is not to be pleaded by means of conclusory allegations only.")[6] However, "Rule 9(b) is not intended to be 'an insurmountable hurdle for [claimants] to overcome;' [t]he complaint must give the party adequate notice of the charges—'it need not marshall [sic] all the evidence against him.'" *Lehman,* at *3.

■ Generally, Rule 9(b)'s requirement that "circumstances constituting fraud" be pleaded with particularity means that the plaintiff must specify the source, time, place, manner and content of the allegedly fraudulent representations, and the consequences thereof. *See, e.g., Koch v. Koch Industries, Inc.,* 203 F.3d 1202, 1236 (10th Cir.), *cert. denied,* 531 U.S. 926, 121 S.Ct. 302, 148 L.Ed.2d 242 (2000); *Lawrence Nat'l Bank v. Edmonds (In re Edmonds),* 924 F.2d 176, 180 (10th Cir.1991) (addressing the specificity of fraud allegations required to state a claim for revocation of discharge based on debtor's fraud); *In re Exabyte Corp. Securities Litigation,* 823 F.Supp. 866, 869 (D.Colo.1993).

The issue in this case is whether Rule 9(b)'s demand for particularity in pleading applies to so-called "fraudulent transfer" claims that do not allege the utterance of any "fraudulent representation" or other wrongdoing on the part of the defendants, but merely allege that the plaintiffs did not receive equivalent value for the transfer, and if Rule 9(b) does apply, whether a general allegation that the plaintiff was insolvent, or was rendered insolvent by the transfer, meets Rule 9(b) pleading criteria.

In support of their assertion that fraudulent transfer allegations are subject to scrutiny under Rule 9(b) and that the Complaint is not sufficiently particular in its factual allegations, the Chase Entities rely heavily on *General Electric Capital Corp. v. Lease Resolution Corp.,* 128 F.3d 1074 (7th Cir.1997) ("*GE Capital*"); *Official Committee of Unsecured Creditors v.*

---

**6.** In CHARLES ALAN WRIGHT AND ARTHUR R. MILLER, 5 FEDERAL PRACTICE AND PROCEDURE (CIVIL) 2D, § 1296, Professors Wright and Miller enumerate the various rationales for pleading fraud with particularity.

A wide variety of reasons have been advanced for requiring particularity in the pleading of fraud or mistake. It has been said that the requirement is necessary to safeguard potential defendants from lightly made claims charging commission of acts that involve some degree of moral turpitude. Allegations of fraud or mistake frequently are advanced only for their nuisance or settlement value and with little hope that they will be successful. Further, since assertions of fraud or mistake often are involved in attempts to reopen completed transactions or set aside previously issued judicial orders, courts are unwilling to entertain charges of this type unless they are based on allegations that are sufficient to show whether the alleged injustice is severe enough to warrant the risks and difficulties inherent in a re-examination of old and settled matters. Also, fraud and mistake embrace such a wide variety of potential conduct that a defendant needs a substantial amount of particularized information about plaintiff's claim in order to enable him to understand it and effectively prepare his response. Finally, as has been pointed out by the commentators, the old cliche that actions or defenses based upon fraud are disfavored and are scrutinized by the courts with great care because they often form the basis for "strike suits" still retains considerable vitality.

*Id.* (footnotes omitted).

*Asea Brown Boveri, Inc. (In re Grand Eagle Cos.)*, 288 B.R. 484 (Bankr.N.D.Ohio 2003); and *Hassett v. Zimmerman (In re O.P.M. Leasing Services, Inc.)*, 32 B.R. 199 (Bankr.S.D.N.Y.1983).

In *GE Capital*, the Seventh Circuit Court of Appeals reiterated that Rule 9(b) requires that a complaint specify the "circumstances of fraud or mistake," including "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Id.*, 128 F.3d at 1078 (citation and quotations omitted). GE Capital, like the Plaintiffs herein, asserted a fraudulent transfer claim that "requires neither evidence of actual intent to defraud nor a specific misrepresentation by the defendant," but the Court nevertheless "evaluate[d] whether GE Capital has plead the circumstances surrounding the elements of this statutory cause of action with sufficient particularity to satisfy Rule 9(b)." *Id.* at 1079.

GE Capital's complaint alleged that the defendant owed GE Capital a debt on a guaranty after a deficiency remained following GE Capital's replevin and liquidation of an aircraft that served as collateral for the guaranteed debt, that defendant transferred substantially all its assets to another entity for less than equivalent value, and that the transfer "rendered [the defendant] insolvent and 'effectively precluded [the defendant] from meeting any deficiency obligation to GE Capital for the aircraft under [the defendant's] guaranty.'" *Id.* at 1080. GE Capital requested that the trial court enter a judgment for the deficiency and declare the transfer of assets null and void to the extent of the judgment. *Id.*

In reviewing the sufficiency of this simple complaint for a fraudulent transfer un-der Rule 9(b), the Court compared it to the form of complaint for a fraudulent conveyance (Form 13) that is deemed "sufficient" by virtue of Rule 84 of the Federal Rules of Civil Procedure. Rule 84 states that "forms contained in the Appendix of Forms are sufficient under the rules and are intended to indicate the simplicity and brevity of statement which the rules contemplate." Fed.R.Civ.P. 84. According to Form 13, a complaint on a note and to set aside a fraudulent transfer is legally sufficient if it contains (1) an allegation of jurisdiction, (2) an allegation regarding a debt owed (including particulars about the note and the amount owed), (3) an allegation that the defendant "conveyed all his property, real and personal [or specify and describe] to [other defendant] for the purpose of defrauding plaintiff and hindering and delaying the collection of the indebtedness," and (4) a prayer for a judgment and declaration of lien. *GE Capital*, 128 F.3d at 1079–80 n. 4. GE Capital's brief statement of facts and prayer for relief was found by the Court to have "sufficiently detailed the circumstances surrounding [the defendant's] alleged constructive fraud" and was "well within the pleading requirements of Rule 9(b)." *Id.* at 1079–80.

Likewise, the Court in the *Asea Brown* case construed Rule 9(b) liberally in fraudulent transfer litigation that alleged constructive rather than active fraud in light of Rule 8(a) of the Federal Rules of Civil Procedure, which requires only a "short and plain statement of the claim." *Asea Brown*, 288 B.R. at 495. That Court recognized that "[s]ome courts have held that a claim for a constructively fraudulent transfer has nothing to do with fraud so that Rule 9(b)'s pleading requirements are not applicable to such claims." *Id.* at 496 n. 16, *citing Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l*

*Corp.),* 281 B.R. 506, 518 (Bankr.E.D.N.Y. 2002). In any event, the *Asea Brown* court found that the creditors' complaint against transferees of property was not lacking in particularity. The court did not address the issue in this case—whether the allegation of insolvency necessary to state a fraudulent transfer claim must be supported in the complaint with a recitation of the underlying evidence of insolvency.

In the *O.P.M. Leasing* case, the bankruptcy court concluded that the plaintiff did not meet the particularity requirements of Rule 9(b) where its fraudulent transfer complaint contained only two paragraphs of "facts" and used statutory language to plead insolvency, finding that "parrot[ing] the statute verbatim" does not meet the dictates of Rule 9(b). *O.P.M. Leasing,* 32 B.R. at 204.[7] In addition, the court stated that making fraud allegations "on information and belief" did not comport with Rule 9(b) pleading standards. *Id.*[8] The court concluded, however, that based upon the explanation of plaintiff's cause of action in its brief opposing the defendant's motion to dismiss, the plaintiff did possess more detailed information about the circumstances of the alleged constructive fraud and thus granted the plaintiff leave to amend its complaint in order to plead the detailed facts upon which its information and belief was founded. *Id.*

This Court leans toward the view that Rule 9(b)'s requirement that "circumstances constituting fraud" be "stated with particularity" applies only to accusations that a defendant *committed* fraud—that is, performed some act that misled or defrauded another. *Accord Helms v. Arboleda (In re Arboleda),* 224 B.R. 640 (Bankr. N.D.Ill.1998) (Rule 9(b) required dismissal of non-specific, conclusory claim for avoidance of transfers made with intent to hinder or defraud creditors, but did not require dismissal of non-specific, conclusory claim for avoidance of transfer made for less than reasonably equivalent value); *Nisselson v. Drew Industries, Inc. (In re White Metal Rolling and Stamping Corp.),* 222 B.R. 417 (Bankr.S.D.N.Y.1998) (same result). When "fraud" is alleged solely because a debtor transferred property while it was insolvent, the transferee is not accused of an act of fraud or deception; indeed, other than receiving the transfer, the conduct and mental state of the transferee is irrelevant. It is the debtor, if anyone, who is charged with transferring property in "fraud" of its creditors. Fraudulent transfer actions alleging "constructive fraud" often seek to recover transfers from innocent third parties. Thus, the policy that a defendant should have notice of the precise act or conduct that is being questioned as fraudulent so that it may adequately defend itself from such loathsome accusations and preserve its reputation is not implicated when there

---

**7.** *See also Migoscha v. Meffert (In re Meffert),* 232 B.R. 71, 74–75 (Bankr.S.D.N.Y.1998) ("Merely quoting or paraphrasing the statutory language [of Section 747(a)(4)(A)] fails to satisfy the particularity requirements of Rule 9(b)"); *Olson v. Potter (In re Potter),* 88 B.R. 843 (Bankr.N.D.Ill.1988) (a conclusory allegation that the debtor, "with intent to hinder, delay or defraud ... has transferred, removed, destroyed, mutilated or concealed property including but not limited to her general ledger of business activities for the years 1982 through 1987" did not give fair notice of

what property was involved or whether the charge was removal, destruction or concealment of property).

**8.** *See also Migoscha v. Meffert (In re Meffert),* 232 B.R. 71, 74 (Bankr.S.D.N.Y.1998) ("A pleader cannot allege fraud based upon information and belief unless the facts are peculiarly within the opposing party's knowledge, and even then, the pleader must allege the facts upon which his belief is based.")

is no allegation that the transferee committed an act of fraud. With respect to the issue of insolvency of the debtor, a general allegation of insolvency provides a defendant fair notice of the plaintiff's contention and renders sufficient information from which a defendant may create discovery requests in order to defend, as in any civil action. A transferee need not "defend its honor" against the accusation that the debtor was or became insolvent when the transferee's knowledge or intent as to the debtor's insolvency is not an element of the fraudulent transfer claim.

■ Regardless of whether Rule 9(b) applies to constructive fraudulent transfer claims, the Court concludes that Plaintiffs herein have sufficiently pleaded circumstances of the constructive fraud. The Complaint provides in tedious detail the "who, what, when, where and how" of the transfers. Copies of the contracts under which the transfers were made, as well as letters confirming the transfers, are incorporated into the Complaint. To the extent that the Chase Entities complain that the insolvency allegations are not specific, the Court finds that CFS and NGU's general allegations of insolvency adequately give fair notice to a defendant of the existence of that element of a fraudulent transfer claim. *See Nisselson v. Drew Industries, Inc. (In re White Metal Rolling and Stamping Corp.),* 222 B.R. 417, 429–30 (Bankr.S.D.N.Y.1998) (complaint stating that "debtor was insolvent at the time of the transfers" and that "transfers left the debtor with unreasonably small capital in light of its uninsured liability to personal injury claimants" was conclusory but sufficient to survive a Rule 12(b)(6) challenge (the Court concluded that Rule 9(b) did not apply to constructive fraudulent transfer claim)).

■ The Court is troubled, however, by the fact that the insolvency allegations are made "on information and belief." CFS and NGU are the only parties in a position to know whether they were insolvent or not at the times of the transfers. It is not fair to the Chase Entities to allow the Plaintiffs to proceed with claims for constructive fraudulent transfers if the Plaintiffs cannot declare that they have evidentiary support for an essential element of their claim, an element for which the evidence is solely within their control, under the standard of Bankruptcy Rule 9011(b)(3).[9] Therefore, the Court will require the Plaintiffs to reassess each of their insolvency allegations[10] in light of the facts known to them and amend their Complaint to either eliminate the indefinite nature of the insolvency allegation (*i.e.,* delete the "on information and belief" language) or eliminate the claim.

## B. *Section 502(d)*

■■ Section 502(d) provides, in relevant part—

Notwithstanding subsections (a) and (b) of this section, the court shall disallow any claim of any entity from which property is recoverable under section . . . 550

---

9. Bankruptcy Rule 9011 provides in relevant part—

(b) Representations to the Court. By presenting to the court . . . a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery[.]

Fed. R. Bankr.P. 9011.

10. *See* Complaint at ¶¶ 43, 50, 51, 58, 66, 74, 75, 83, 90, 97 and 98.

... of this title or that is a transferee of a transfer avoidable under section ... 544, ... [or] 548 ... of this title, unless such entity or transferee has paid the amount, or turned over any such property, for which such entity or transferee is liable under section 550 ... of this title. 11 U.S.C. § 502(d). The purpose of Section 502(d) is to deny a claimant against the estate the right to participate in distribution of the estate if that claimant has property to which the estate is entitled. A claimant must "play by the rules of the Bankruptcy Code and first return any preferential transfers" before its claim may be allowed. *United States Lines, Inc. v. United States of America (In re McLean Industries, Inc.),* 184 B.R. 10, 14 (Bankr.S.D.N.Y.1995).

The Chase Entities argue that the Complaint fails to state a Section 502(d) claim because CFS and NGU have not yet obtained a judicial determination of the fraudulent transfer claims that would form the predicate for disallowing the Chase Entities' claims against CFS and NGU. Rule 18(b) of the Federal Rules of Civil Procedure, made applicable to this proceeding by Bankruptcy Rule 7018, speaks directly to this issue—

> (a) Joinder of Claims. A party asserting a claim to relief as an original claim, counterclaim, cross-claim, or third-party claim, may join, either as independent or as alternate claims, as many claims, legal, equitable, or maritime, as the party has against an opposing party.
>
> (b) Joinder of Remedies; Fraudulent Conveyances. *Whenever a claim is one heretofore cognizable only after another claim has been prosecuted to a conclusion, the two claims may be joined in a single action; but the court shall grant relief in that action only in accordance with the relative substantive rights of the parties.* In particular, a plaintiff

may state a claim for money and a claim to have set aside a conveyance fraudulent as to that plaintiff, without first having obtained a judgment establishing the claim for money.

Fed.R.Civ.P. 18 (emphasis added).

Because it is possible that the Plaintiffs' Section 502(d) claim may become "cognizable" after the fraudulent transfer claims are prosecuted to conclusion, the Section 502(d) claim is legitimately joined with the Plaintiffs' other claims against the Chase Entities and is not subject to dismissal for failure to state a claim.

## VII. Conclusion

The Motion to Dismiss is **denied.** The Plaintiffs are granted leave to file and serve on the Chase Entities an amended complaint that remedies the deficiencies identified herein within fifteen (15) days hereof. The Chase Entities shall file their answer within fifteen (15) days of service of the amended complaint.

**SO ORDERED** this _____ day of August, 2003.